FILED 06 APR '20 10:23USDC-ORP

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

District of Oregon

_____ Division

Jerry Alexander Menchu

*Plaintiff(s)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Multnomah County Heath Department

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:20-CV-00559 AC

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☒ Yes ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jerry Alexander Menchu |
| Street Address | 1644 NW. Bridgeway LN. |
| City and County | Beaverton. Washington County |
| State and Zip Code | Oregon 97006 |
| Telephone Number | 503-442-2351 |
| E-mail Address | Menchu36@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

Name                                 Multnomah County Health Department.
Job or Title *(if known)*            ~~Interpreter~~ ĵxm.
Street Address                       619 NW. 6th Avenue
City and County                      Portland. Multnomah County
State and Zip Code                   Org. Oregon 97209
Telephone Number                     503-988-3674
E-mail Address *(if known)*          health. dept @ multco.us

Defendant No. 2

Name

Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 3

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 4

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

Name            Integrated clinical services / Language

Street Address  1600 SS. 190th Avenue    Services

City and County Portland. Multnomah County

State and Zip Code  Oregon  97233

Telephone Number  503-988-5668

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

Please review attachment

☑    Other federal law *(specify the federal law)*:
42 USC 2000d-3 where discrimination infects
Beneficieries

☐    Relevant state law *(specify, if known)*:
O.R.S at 659A.030(1)(a), ORS at 659A.030(1)(f) -

☐    Relevant city or county law *(specify, if known)*:
Retaliation for filling complaint with ERB and Boli.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☐    Termination of my employment.

☒    Failure to promote me.

☐    Failure to accommodate my disability.

☒    Unequal terms and conditions of my employment.

☒    Retaliation.

☐    Other acts *(specify)*:   Retaliation infects Beneficieries of Program & Activities.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

Please review attachment

C.    I believe that defendant(s) *(check one)*:

☒    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race          Please review attachment
☒    color         Please review attachment
☐    gender/sex    _____
☐    religion      _____
☒    national origin   Please review attachment
☐    age *(year of birth)* _____    *(only when asserting a claim of age discrimination.)*
☐    disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*Please review attachment*

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

11/16/2019

B.      The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*    1/30/2020

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*Please review attachment*

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    4/3/2020

Signature of Plaintiff

Printed Name of Plaintiff    Jerry Alexander Menchu

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## VERIFIED COMPLAINT

1.JERRY MENCHU, by and through as representing himself "pro se litigant",

respectfully alleges upon personal knowledge as to his own acts and status, and upon

information and belief as to all other matters:

## PRELIMINARY STATEMENT

2.Plaintiff Jerry Menchu (hereinafter "plaintiff or Menchu") is a Qualified Health Care

Interpreter, who is entitled to participate in without being excluded from, denied the benefits

of, or subjected to discrimination due to his Race and/or National Origen in his employers

health department; labor operations policies and procedures, terms and conditions,

privileges and any other entitlements secured in programs and activities defined in **42 U.S.**

**C § 2000d–4a.** because discrimination against Menchu violates **42 U.S.C §2000d-**

**3**Discrimination against Plaintiff that ultimately affects beneficiaries who are covered under

title VI. Menchu is entitled to work without discrimination in terms and conditions and

without retaliation in defense to his civil rights or other rights given to him by law as an

employee in his employment. Retaliation is another form of discrimination and if Menchu's

primary discrimination complaint does not survive then retaliation towards him based on the

bellow facts, should be considered his primary discriminatory treatment.

3. Menchu's job as a Qualified Health Care Interpreter is unique, it could be considered one

of the only jobs, if not the "only one" in the United States that relies almost in its entirety of

citizens (workers or freelancers) pertaining to a protected group, protection handed down by

congress as to their Race and/or National Origin. Even if there exists a few white US

nationals working as Qualified interpreters, it could be very likely that most of them were able to obtain their full dominance of the target language that must be up to par with the language skills necessary to course a secondary education abroad which is one of the skill ingredients  necessary to become a Qualified Health Care Interpreter and so by living several years in a foreign country and adopting another culture, then could be said that a US. National could become a multicultural. A multicultural individual could also be protected under **Title VI** definition.

**4**. Menchu's job in the United States relies almost in its entirety on government grant money because mostly in its entirety serves Federally financed beneficiaries that are English deficient who are enrolled in public benefit program.

**5**. Menchu's job could be considered one of the only jobs in the United States, if not the "only one" that **serves** exclusively citizens pertaining to a protected group; Race and/or National Origin with regards to their English deficiency needs.

**6**. Because of the above at ¶**3-5**, to give an employee who is a Qualified Health Care Interpreter in program and activities or in employment a lesser treatment than other white individuals or other employment positions in Multnomah County's Health Department without a legitimate reason such as to ensure the quality of its daily functions in its operations, then in Menchu's opinion should be considered an intent to discriminate also to discriminate against its English deficient beneficiaries who are protected under **Title VI** should be considered circumstantial evidence of discrimination against Menchu or other Qualified interpreters in the department because the majority of them enjoy protection under **Title VI**.

7.Menchu works for Multnomah County Health Department (hereinafter "defendants or MCHD or Multnomah County") "Defendants" which is a local government of the state of Oregon. The discrimination against Menchu in his employment health department infects beneficiaries in its Health programs or activities. Health programs defined in: *45 CFR § 92.4 – Definitions* such as in all its operations of its State Medicare, children's health insurance and the basic health Programs, its community health clinics, centers, community-based treatment facilities, and the provision or administration of health-related services, insurance, or other related coverage, and the provision of assistance to individuals in obtaining health related services, health insurance coverage or other health related coverage. Menchu is one of only two in-house Qualified Health Care Interpreters and him being the only Spanish Qualified interpreter in his employer's health department. Menchu is certified by the Oregon Health Authority "OHA": **OAR 333-002-0040.** OHA is the highest health authority in the state of Oregon and it requires that all interpreters who work for State or local government be Qualified or Certified, and if private then shall use a Qualified, Certified whenever possible. Menchu's screening reaches the level of State and Federal standards concerning the quality of interpreting services based on State law: **2017 ORS 413.550, 552, 58** and *in* **ORS 413.552(3):** which states that a provider may only work with a non-Certified or non-Qualified health care interpreter if the provider has taken all steps necessary to obtain their services. And Federal: **45 CFR § 92.4 – Definitions as Title VI** as amended **42 U.S.C §** **2000d** *et. Sec.,* as implemented by **45 C.F.R Part 80** and regarding the scope of its obligations under **Title VI** and **Section 1557;**

Qualified interpreter definition as *in;*

> *45 CFR § 92.4 – Definitions: Auxiliary aids and services include:*
> *and;*

*Cont. down § 92.4 – Definitions: cover entity means:*
*and;*
*Cont. down § 92.4: – Definitions: Language assistance services may include, but*
*are not limited to:*

Together with:

Language assistance service requirements as *in:*

*45 CFR at § 92.201(c):*
*and;*
*Cont. down at § 92.201(d)(1):*
*and;*
*Cont. down at § 92.201inparticularly at (e):*

Because of the above regulations and Menchu's interpreting skills satisfying the above regulations then Menchu should be the first in line to be called to serve the English deficient patients in his department by **Title VI** definitions because he is the only screened Spanish qualified interpreter employee who reaches the level of State and Federal standards and who can secure the less discriminatory alternative possible concerning language access.

8.According to Section 604, **42 U.S.C 2000d-3**, prohibits discrimination in employment practices when the primary objective of federal financial assistance is to provide employment, or <u>when the employment practice discriminates against the beneficiaries of the program receiving assistance</u>.

9.Because this case concerns Menchu's discrimination in employment infecting those that he serves being beneficiaries in program and activities sponsored by federal money then Menchu's discrimination makes his employer to be out of compliance with **Title VI** and **VII**, then Menchu believes in this case, where Menchu's discrimination under **Title VII** ends then under **Title VI** continues or vice-versa.

Menchu brings forth this action pursuant to **Title VI** and **VII** of the Civil Rights Act, **42**

U.S.C §§ 2000d-2000d-7, concerning §2000d-3:Discrimination against Plaintiff that ultimately affects beneficiaries who are covered under title VI *et seq.*, 42 U.S.C §§ 2000e-2000e-3.

State of Oregon Discrimination laws ORS §659A.030(1)(a) – Employment discrimination of the basis of race and national origin and ORS §659A.030(1)(f) – Retaliation for filing complaints with the Oregon Employment Relations Board "ERB" and Oregon Bureau of Labor and Industries "BOLI".

and any other violations discovered in trial.

## THE PARTIES

10.Jerry Menchu "Plaintiff is an American, growing up and raised in Guatemala where he lived since age 6. Raised, studied and developed a Guatemalan national social identity with its cultural traditions. Later at age 30 coming back to the State that witnessed his birth being the state of Oregon United States. Menchu is bi-racial white mixed with Mayan Guatemalan native who looks Mediterranean and who has been mistaken with being Egyptian or Italian. Also, Menchu considers himself of Hispanic American ethnicity. Menchu's first language being Spanish and his last name being Mayan and speaks English with a Spanish accent. Menchu is an interpreter that started his career in 1999, interpreting for English deficient patients in several hospitals, clinics etc. through several contracted interpreting agencies in the Portland metro area in Oregon. Menchu in 2004 studied in Portland Community College to become a Qualified Healthcare Interpreter having passed all the Oregon Healthcare program requirements and becoming certified in August 23, 2015. He can be found in the state of Oregon Qualified Health Care Interpreter Registry Number #010021. Menchu has

practiced interpreting for more than 20 years accumulating more than 30,000 hours of practice working in-person and over the phone interpreting. Menchu first started working for Multnomah County Health Department in 2004 and then rehired in June 6, 2013 first as an interpreter and then in August 23, 2015 as a Qualified Health Care Interpreter employee. Because of Menchu's job in Multnomah County Health Department, he has been known to be Hispanic and his employer is aware of Menchu's Hispanic ancestry.

I JERRY MENCHU reside in:
1644 NW Bridgeway LN.
Beaverton OR 97006
Ph. 503-442-2351
Menchu36@gmail.com

11.Defendant Multnomah County Health Department is a local government in the state of Oregon with more than 5,000 employees and its health department works under the Oregon Coordinated Care Organizations "CCO's" system which works under CCO Health Share under the guidance of the Oregon Health Authority "OHA" and helps distribute State Medicare, children's health insurance and the basic health Programs in its 6 community health clinics throughout the county "Multnomah County" which also offers the provision of assistance to individuals in obtaining health related services, health insurance coverage or other health related coverage. In its clinics offering Primary Care, Specialty Care, Mental Health and other ancillary services to its clinics such as Laboratory, Pharmacies, Language Services, Eligibility services, Community Health Social Services and other related services.

Multnomah's Health department vision:

MULTCO'S vision described in https://multco.us/health uses as slogan the following:

> *"Dedicated to the advancement and provision of community health and wellness for Multnomah County, offering information on immunizations, health education, and disease, our mission is to work in partnership with the communities we serve, to*

*assure, promote and protect the health of the people of Multnomah County.*"

with headquarters office location and Diredtor:

Director Multnomah Co. Health Dep.
PatriciaCharles-Heathers
patricia.carles-heathers@multco.us
Multnomah County Health Department
619 NW 6ᵗʰ avenue.
Portland, OR. 97209
503.988.3674
503.988.3676 fax
877.735.7525 TDD
health.dept@multco.us

## JURISDICTION AND VENUE

12.Jurisdiction of this court is invoked pursuant to and under 28 U.S.C. § § 1331

(federal question), 1343 (civil right), 1367 (supplemental), 2202 (injunctive relief), and

42 U.S.C. §§ 2000d, 2000e, 1981 (civil rights).

13.Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b), in that

Defendants maintain the establishment in question within this judicial district, and the

majority of the events comprising the federal claims have taken place within this judicial

district.

## FACTS

14. Multnomah County Health Department ("MCHD") rehired Menchu on June 6, 2013 as an

On-call Medical Interpreter with class code 8002, Code 8002 is reserved for temporary utility

workers such as for example, an electrician hired to work on a temporary basis, etc. Menchu

was hired to interpret for Spanish-speaking clients at various clinics joining a pool of more than a

dozen On-call interpreters of different target languages. Menchu as a precondition requirement to

his hiring must be available to work from 7:40am to 7:00pm Monday through Friday. Of the pool of more than a dozen On-call interpreters, there only exist to this date only two continuing Qualified Health Care Interpreters working for MCHD; Russian Nataly Romanovsky and Menchu. Menchu is the only Spanish Qualified Health Care Interpreter and who is working full-time.

15. When Menchu first started working for MCHD, he experienced repeated discriminatory behavior by the people who manned the primary clinics:

a. All interpreters were not given the same privileges as offered to all other employees working for the health department including other On-call's. Menchu was not allowed the privilege to be able to enter primary medical and dental areas if not with a patient or escorted in by another co-worker including lunch break rooms or some office areas and with this action the effect in non-participation in recreational activities such as employees celebrating birthdays, baby showers performed in the employees designed lunch break areas, etc. Also, MENCHU has never been invited to join other activities sponsored by MCHD like for example: meetings, education to give a better performance, etc. Menchu was not given a magnetic key badge from his supervisor as given to other on-call employees and to outsource contracted employees services like janitorial and security services to open the primary medical and dental areas and then welcoming suspicion from other employees associates and enticing them in asking questions such as *"if you are really a legitimate employee for the health department, why is it that you are not allowed to open the door with your badge?"* and when Menchu would respond that MCHD did not allow him these privileges, then in several occasions got the following remark: *"Well I am on-call and they gave me a key"* and in one occasion, hearing: *"you*

MENCHU v. MULTNOMAH COUNTY: Plaintiff preliminary statement of issues

*know why they don't give you a key?" "because they <u>don't trust you</u>'"* and most will flat-out not open until they will get the OK from his/her supervisor and only then being escorted in. Menchu would feel non-included and humiliated and embarrass to see other On-call employees who were starting to work in the health department with this privilege. Interpreters are usually mistreated with authoritarian attitudes, indifference and like being treating as a child.

b. If Menchu arrived at the front desk of the clinic to meet a client, and the client had not shown up for the appointment, the front desk receptionist would quiz him publicly about his actions. Although reminding patients of their appointments was the responsibility of the clinic's front desk, Menchu was always expected to make such calls. The clinic knew they had to pay the regular employees for their time when they were used to make these reminder calls, where they did not pay Menchu (due to him being an "on-call" employee) for that time. If a patient failed to show up, Menchu would be asked if he had made an (afterhours) call the night before to remind the patient of the appointment. When Menchu affirmed that he had made the call, the receptionist would respond skeptically. Sometimes, the receptionist would call the patient to confirm that Menchu had called the prior evening, and the patient would, unsurprisingly, deny it. The receptionist would then scold Menchu publicly, even yelling at him and the some of the above treatment is also reflected in MCHD's Language Services manual, Language Services has the task of scheduling Menchu's interpreting appointments, being then a pattern of practice to discriminate base on an exclusive discriminatory policy for interpreters. In May 24th 2016, Menchu contacted the County's HIPAA hotline to note his concern that these after-hours calls, being on his personal time after he had logged

out of work, violated HIPAA rules, given that Menchu had to take patients' personal information home to make the calls. The County's chief privacy officer Cindy Hahn emailed September 2, 2016 to acknowledge that this procedure violated HIPAA and that they would instruct the County to stop having the interpreters make these calls from home. Despite the warning, the County continued to ask Menchu to make these after-hours calls, but he refused.

c. If a patient arrived and checked in directly without checking in with Menchu, then was not called in for the appointment, the patient would check with the front desk. Menchu would then be reprimanded by the receptionist, publicly and often yelling, for failing to remind the clinic of the patient's presence.

d. At times, either the Clinic or the MCHD's ancillary language services "Language Services" who schedules Menchu's jobs would cancel an appointment but would fail to notify Menchu. When Menchu arrived for these appointments, the receptionist would refuse to sign off his voucher. Both groups would deny responsibility for the failure to notify him, but in the end, he went unpaid. Likewise, if a patient cancelled with no notice, and Menchu arrived, the clinic would not sign off his voucher for payment.

16. On April 14, 2015, the County changed the requirements for on-call interpreters. They required them to be Certified Health Care Interpreters by October 1, 2015 to continue in their positions, per new regulations from the Health Department. Under the regulations, the Health Care Interpreters ("HCI") would have to renew their HCI letters of Certification every three years with the Oregon Health Authority. Menchu received his HCI credentials from the Office of Equity and Inclusion of the Oregon Health Authority on August 23, 2015, to be renewed

August 23, 2018, and when Menchu obtained his certification as a Qualified Health Care Interpreter, then MCHD continued his employment with class code 8002 and being On-Call. Approximately a dozen interpreters did not continue. However, one interpreter, a white U.S. citizen George Stoumbos, was the only one of the On-call interpreters allowed to continue interpreting without the certification. Around this same time, another Russian interpreter Nataly Romanovsky who started working for MCHD in 2002 and who had been working full-time since December of 2013, had her hours cut in April of 2015 right on the cusp when in April 14, 2015 the County changed the requirements for On-call interpreters, being required to be a Certified Health Care Interpreter by October 1, 2015 while at the same time a native U.S. citizen with the first name of Carmen, who was working as an Office Assistant 2, at the Mid-County health clinic was working full time as an interpreter, but without certification and no hours cut. Carmen continued working without a certificate until around the beginning of 2018 when she stopped working for MCHD on her own accord based on her comments.

17. On August 28, 2015, Menchu filed a complaint with the Multnomah County Office of Equity and Inclusion, as well as with Human Resources, regarding discriminatory treatment by the East County Health Clinic/ East County Medical Unit in Gresham. Menchu noted that both him and Martina Murray, another Health Care Interpreter, had been subjected to humiliating treatment by the staff. The supervisor, Jacqueline Chandler, had instructed the receptionist, Gilbert Orozco, that the interpreters could no longer go into the back office to fax in their timesheets at the end of their work day unless they were escorted by Gilbert, although there were Multnomah County employees, they explained that regulations allowed this access and their supervisor Amaury Sarmiento had already spoken with Ms. Chandler to allow the unobstructed access to the back office and fax machine. Ms. Chandler nonetheless refused to follow-up the issue with their

supervisor and required them both to be escorted out.  Other people who did not work for

Multnomah County Health Department, including a Caucasian CareOregon employee, had free

access to the back office and fax. Menchu previously had submitted an email on June 4, 2015 of

his concern regarding the above to his supervisor at the time Amaury Sarmiento.

18. On October 26, 2015, the County responded to Menchu's complaint by saying both that Ms.

Chandler was aware of the updated procedure allowing staff in the employee clinic area with a

county I.D., but that the complaint was, somehow, "unsubstantiated – There is insufficient

evidence to conclude that a policy or rule violation occurred", and insufficient evidence that her

actions were based on protected class or discrimination. Ms. Chandler was required to apologize,

and "ensured that clinic staff who work at the entrances to the employee areas are appraised of

the practice for access."

19. On January 9, 2017 a story written by Reporter Jessica Floum Oregon's top newspaper The

Oregonian and later posted in October 01, 2017 with the title: *'Racism at Multnomah County*

*insidious and far-reaching, many say'*

*https://www.oregonlive.com/politics/2017/10/institutional_racism_at_multno.html*

Or google: *"Racism at Multnomah County insidious and far-reaching, many say"*

that started after Multnomah County Chair Deborah Kafoury acknowledged a week prior that the

county had subjected employees of color to institutional racism and asking the public to hold her

accountable for making strides to solve the problem by April of the same year, after her

statements followed the ouster of one of the county's highest-ranking black officials, public

health director Tricia Tillman, who called on county leaders to investigate systemic racism. In

the wake of Tillman's claims, The Oregonian/OregonLive interviewed 18 current and former Multnomah County employees of color across six departments.

Nearly all said they have been routinely subjected to insensitive remarks and hostile treatment in the workplace. Many said white co-workers got encouragement and mentoring that they did not receive. Others said they missed out on promotions or feared that they would be singled out because of their race if the county needed to downsize.

20.In March 6, 2017, Menchu receives an email from his Supervisor Gabriela Mora where she explains that because of budget cuts, Menchu and all other On-call interpreters will be receiving only 4 appointments per day, 2 in the morning and 2 in the afternoon and immediately Menchu realized the County was cutting his hours and using more of its uncertified bilingual staff to interpret for non-English-speaking patients in violation of **45 CFR at 92.201(d)(1)-(2)**. Menchu and other three qualified interpreters Suan Khan Langh, Nataly Romanovsky, Abdifatah Abdurahman who were at the time the only ones allowed to continue interpreting based on MCHD's April 14, 2015 decision to only allow those who are Qualified ¶**16**, at that time complained to the Oregon Health Authority on April 25, 2017 and on August 29, 2017 to the U.S. Department of Health and Human Services (HHS) Office of Civil Rights (OCR) under the Affordable Care Act Grievance Procedure (§1557) regarding Limited English Proficient "LEP" patients. HHS notified the County on December 19, 2017 that their use of unqualified interpreters violated the Affordable Care Act law and it could investigate if its practice continues [EXB 1]

21.After the County received the warning from HHS, Menchu started to have meetings with Jonathan Ostar, Multnomah County's Civil Rights Administrator with several other employees in

the executive level of the County. Several interesting solid progresses occurred regarding MCHD's language access with workforce equity were made for example: there was a development in training curriculum, a finalization of guidance DEI-2 Document policy regarding language access, Notice of Non-Discrimination and Website access, Updated posters with corrected "language access" taglines and in new location for certain clinics, updated footer for all County websites with language accessibility information, Language Baseline Survey Assessment -Commitment from Health ICS and DCHS to engage in survey with managers and frontline staff review and a meeting was scheduled with Language Services; Pamela Buckmaster Health Center Operations Program Supervisor and Gabriela Mora Health Center Supervisor who is Menchu's supervisor, Health and DCHD leadership on September 15, 2017, these language access taglines are still on the wall in MCHD's clinics up to this date to keep the effort alive and they say: *"this free help includes a Qualified language interpreters"*.  [EXB 2]

22.Once again MCHD began to use Menchu full time but started sending him more to private clinics as to MCHD ones.  Around this time, Menchu was asked to help form a interpreters' union to join a committee, and Menchu sent a query to the Oregon Government Ethics Commission to find out as a public employee, a "public official" whether joining the committee would be a violation of the ethics laws.  The commission responded that joining the committee was fine, but an employee could violate the ethics laws if the committee work involved employment by the private sector while working on the County's dime in his official capacity. Menchu realized that the County sending him to work for the private clinics and being paid by the public was possibly a violation of the ethics law. Menchu complained to his supervisor about this, and the County stopped sending him to private clinics to interpret. Menchu raises his concern in an August 8, 2018 meeting with Erin Murphy and Shannon Goulter Human resources

analyst and through email when Menchu explains his daily chore to Erin Murphy on August 20, 2018.

23.In spite of the warning from HHS to use only qualified Medical Interpreters, the county continues to use uncertified office staff to interpret for their patients.

24.In September 15, 2017 the Board of County Commissioners, Multnomah County Oregon sent a County-wide statement announcing that the Office of Diversity and Equity alongside of employees of Color Employee Resource Group and community partners brought forward a resolution that would formally mark the start of collective work to develop a Workforce Equity Strategy for Multnomah County and in September 28,2017 MCHD interim director Wendy Lear send out a County-wide email expressing that last week she had met with the Board of County Commissioners and that they had passed a Workforce Equity Resolution and that she also wanted to reinforce the long standing commitment towards addressing systematic racism in the department.

25.In March 15, 2018, Menchu saw MCHD posting for a Health Assistant 1, which included, among other duties: "Serve as interpreter for non-English speaking patients throughout their visit and translate verbal communication between provider and patient". Menchu sent an email inquiry to Naomi Melendez Mid-County Health Center, a MCHD Clinic Operation Supervisor who was to take applications, asking about the pay rate and certification requirements for the position.  In the email exchange, Menchu discovered that the position would require none of the certifications that the "on-call" interpreters are required to have but would have a wage range of $16.67-$20.35, depending on experience and benefits. The mid-point of that wage range exceeded Menchu's wages at that time, although Menchu had 5 years of experience working for

MCHD. Menchu later discovered that this position was the vacancy left by the prior employee with the first name of "Carmen" position who had been working as a Spanish interpreter without certifications but under the title of Health Assistant 1 ¶**16**. MCHD hired a female worker with the name of Graciela Shover who was also non-qualified on May 18, 2018. Graciela continued working in her position without qualifications as an interpreter until she left July of 2019, she affirms that she too felt discriminated in her position in the year she worked for MCHD.

26. In July 18, 2018 Menchu was talking with a County co-worker Dana Khouri, Dana worked for the WIC program under the supervision of the Health Department, as an On-call working only 10 hours per month and started working on May of 2018 and in July 19th, 2018 she told Menchu that she received a Cost of leaving increment "Cola" in only working for about a month in to her new job plus free training from Multnomah County.

27. In July 19, 2018, Mr. Menchu enquired of Travis Graves, the Chief Human Resources officer and DCM Deputy Director for Multnomah County, about a cost of living increase. He was informed that as an on-call interpreter, he was unclassified, not a member of Local 88, and compensated at a flat rate with no scheduled rate increases.

28. On July 19, 2018, I sent my first grievance by email to Multnomah County Health Maintaining, disputing my classification, since I work full time.

29. On July 19, 2018 Menchu filed a discrimination complaint based on national origin and race (Hispanic) with Marissa Madrigal, the MCHD Chief Operating Officer, stating that the County failed to give fringe benefits and to include the interpreters in the Local 88 bargaining unit because of discrimination against the largely minority and foreign-born interpreters and their association with minority and foreign patients.

**30.**Also, Menchu is not a member of Local 88 currently but disputes the excuse to discriminate by his employer in terms that are being used by which he is discriminated in wages in not receiving benefits as other employees and the reason he is denied membership:

The American Federation of State, County and Municipal Employees ("AFSCME") Local 88 ("Local 88"), under Article 18(IV)(A) of the "2017-2020 Agreement Between Multnomah County Oregon and Multnomah County Employees, Union Local **88**, AFSCME, AFL-CIO" , ("CBA") *https://www.afscmelocal88.org/wp-content/uploads/2018/08/2017-2020-LOCAL-88-CONTRACT-Final-Version-for-Printing-8.23.18.pdf*

Or google: "*2017–2020 AGREEMENT between Multnomah County*"

[p.102] is the exclusive representative of approximately 3500 general employees of Multnomah County and other sub-locals that represent physicians, dentists, and juvenile custody support specialists in Multnomah County as well as workers at Central City Concern and Transitions Projects, Inc. In this capacity, Local **88** represents certain classified employees of MCHD.

**31.**According to the CBA Article 3(I) [p.7], Local 88 is the "sole and exclusive bargaining representative...for all employees in the County classified service as set forth in MCC Chapter 9 **except those specifically excluded**...."

**32.**According to Multnomah County Code Chapter 9, §9.200 Classified Service: **The county classified service includes all county employees except** the following: ... (F) **Temporary employees and those who work on-call or less than half-time.**"

**33.**According to MCC Chapter 9, Section2, §9.001 Definitions, **an on-call employee is "A**

**person employed to meet intermittent, irregular or less than half-time county work needs."**

34.According to the CBA, "County employees who are <u>excluded</u> from the bargaining unit are: *** (B) **On-call employees whose appointment is intermittent, irregular or is normally less than half-time**." Article 3(I)(B) [p.7]. Further, according to the CBA, "On-call appointments have no time limit of hire. On-call employees may be terminated at any time and have no appeal rights within the County."

35.While initially MCHD did call Menchu to work during 2013 on an "intermittent, irregular, or less than half-time basis", by 2014, Menchu was working over half-time, at ~26 hours per week on average. By 2015, Menchu worked full-time, with approximately 1876 hours, or ~36 hrs/week, as an interpreter for MCHD. In 2016, Menchu worked ~2461 hours (almost 400 of those hours as overtime), or ~47 hrs/week. In 2017 he worked ~2260 hours (with more than 200 hours of overtime in addition to his full-time load) or ~43.5 hrs/week. And, in 2018, he worked ~2539 hours or ~48.8 hrs/week (with ~477 hours in overtime). and in 2019, he was paid $54,615.42 in a year for his hours worked. In other words, by no later than 2015, Menchu was in no way "intermittent, irregular, or less than half-time" and did not meet the definition of an on-call employee. He should have been reclassified by 2014 as a regular status, classified service employee with union membership. However, by the stratagem of specifically classifying the Interpreter job as "On Call", the County found that it could use the Interpreters full-time but treat them as on-call to avoid any of the pay, fringe benefits of regular classified service and by classifying Menchu with code 8002, the code reserved for temporary utility workers to then pay Menchu a fix price and to avoid any cost of leaving since his change of terms in his employment in October 1, 2015.

36. From the beginning of his employment in 2013 until October of 2018, Mr. Menchu received $18.04 per hour for regular hours of work, and $27.06 per hour for overtime work. Because he was incorrectly classified as "on-call and code 8002", he received:

   a.   no cost of living adjustments (COLA);

   b.   no merit increases;

   c.   no paid vacation (were he a union member, per CBA Article 8(II), employees of 2-5 years accrue 5 hours per pay period, with a maximum of 248 hours per year; employees of 5-10 years accrue 6 hours per pay period, with a maximum of 280 hours per year) ;

   d.   no paid holidays (CBA Article 7(I)(A) recognizes at least 9 paid holidays for union members);

   e.   no paid leave for jury duty, military duty, or bereavement (all provided under the CBA to union members);

   f.   no medical, dental insurance (provided under Article 11(I) of the CBA for union members) for him or his dependents;

   g.   no access to short-term or long-term disability or life insurance (provided under Article 11(II) of the CBA for union members);

   h.   no PERS participation or pickup (provided under Article 16(I)-(III) of the CBA for union members).

37. While MCHD reimburses Menchu for his mileage as he travels around to various appointments, it does not pay him for his time while he travels to and from appointments (which union members receive by CBA Addendum E(I)(D)(2)) [p.157], and violating OAR 839-020-0045, which requires "Time spent by an employee in travel as part of the employee's principal activity must be counted as hours worked."

**38**.Also, the use of Menchu's laptop and spear time to help process his MCHD checks by inputting his time worked for every payday into the Workday program for him to get paid. Menchu has at times been discounted from his Workday program a daily 30min to an hour Lunch Break when Menchu does not have a specific time assigned to take his break, this discount for reasons not explained rarely enough happens intermittently but Menchu should not be discounted this time. Menchu does not get paid for the time he puts in to help arrange appointments for clients and does not get paid if the client fails to appear for his or her appointment, in violation of OAR 839-020-0040 (2) "Work requested or required is considered work time. Work not requested but suffered or permitted is considered work time." This time would be considered work time by Articles 13(VII) and 14 (III)(B) and (C) [p.66, 72] of the CBA were he a union member.

**39**.Menchu's work required him to interpret fluently, accurately, quickly, and clearly between English and Spanish for MCHD's clients and their health care providers, including the style and tone of each language; manage his own schedule; travel extensively to different locations for clients' appointments; help with the scheduling of client appointments and follow up with clients to ensure that they would attend appointments. However, he receives no differential for bilingual translation and culturally-specific knowledge, skills, and ability (which are provided to union members under Article 14(XI) and (XII) of the CBA) [ p. 81].

**40**.In addition to avoiding the pay and fringe benefit costs, the County required Menchu and the other interpreters to obtain, and pay for out of their own pockets, specific and increased credentials to retain their jobs. For example, on April 14, 2015, Shannon Goulter notified the interpreters that the Health Department would require any permanent, on-call or temp

interpreters to be Certified Health Care Interpreters by October 1, 2015. Mr. Menchu obtained the credentials necessary to meet this requirement. The County did not pay for any of the credentialing classes that it required the interpreters to complete, Menchu spend approximately $1,200 dollars for his, although union members are reimbursed up to $500 for such certification training per Article 14(XIV) of the CBA [p. 82].Menchu believes they felt they could do this because Menchu is a non-native-English speaker and a person of color.

41.On July 23, 2018, Ms. Madrigal acknowledged receipt of Menchu's grievance, indicating they would "be reaching out to you shortly", and pointing him to the Human Resources Manager, Holly Calhoun, for any questions.

42.A week later, having heard nothing, Mr. Menchu contacted Holly Calhoun. On July 31, 2018, Shannon Goulter, a MCHD Senior Human Resources Analyst, set up a meeting for August 8 with herself, Mr. Menchu, and Erin Murphy, another MCHD Senior Human Resources Analyst. On August 7, Ms. Murphy rescheduled the meeting to August 16, first saying that it made sense to move the meeting as Central Class Comp would be discussing the situation with Travis Graves on the 14th, then saying she needed to move it due to all-day testing on the 8th.

43.On August 16, 2018, Mr. Menchu, Ms. Goulter, and Ms. Murphy met. Ms. Murphy indicated that the discussion between herself, Central Class Comp, and Travis Graves had resulted in a decision to create a regular classification for interpreters. They indicated that a market study was being conducted to determine the appropriate rate of pay. She indicated that it would be a classified position under the union, with the "Same exact work". She explained that it would take 30-60 days to create the new job class, with discussions on the step at which he would enter, and assurances that "90 days for the whole thing to get done". However, Ms. Goulter then told him that he might have to interview for his position as opposed to being moved into it automatically,

although she subsequently told him that she didn't think that was probable. However, she also indicated that possibly only 2 positions would be opened, although she subsequently assured him "We've gotten the yes to create the positions....It's just the logistics of how do we move the people who deserve to be into them..." Menchu left the meeting with the reasonable understanding that within 90 days, he would be in a new classification, moved into that position, and union-represented.

44. The Health Care Interpreters ("HCI") must renew their HCI letters of Certification every three years with the Oregon Health Authority, per the old OAR 333-002-0120, -140, -150. On September 10, 2018, the Oregon Council on HCI held a meeting and approved a motion to extend the time for HCI renewals from 3 to 4 years due to difficulties and delays in the certification process. They noted that they would update the Oregon Administrative Rules to reflect the change.

45. On October 11, 2018, Ms. Murphy emailed Menchu to notify him that the new classification had been added to the system, and the interpreters were moved into that classification as of October 3, 2018, with a pay increase from $18.04 to $20.48, Step 1 of Pay Scale 15, and regular COLA on July 1 of each year. However, she then indicated that the interpreters would remain on-call, that regular status positions would be posted, and the interpreters would have to apply through the competitive civil service process to be eligible for hire – but that they had no timeline on when that would happen. Menchu also disputes that he should receive a competitive civil service test because MCHD already tested his interpreting skills against other members of society in 2004 and out of several he was chosen. the test was given by his then supervisor Carmen Costan and Menchu was rehired back in June 6, 2013. Menchu is also Qualified by the state of Oregon's Oregon Health Authority "OHA, the highest health authority in Oregon,

through its branch the Office of equity and inclusion "OEI" OHA-OEI. This Qualification supersedes any bilingual test offered by MCHD for its bilingual employees in order to get a 4.% of pay and which the County is using these bilingual skills in order to cover the interpreting gap with its English deficient patients.

46. On October 11, 2018, Ms. Murphy indicated to Eben Pullman, the council representative for AFSCME Council 75 that nothing could be done on regular status Interpreter positions until 2019, due to a transition of the payroll system, recruitment, hiring, and other personnel action freezes.

47. On October 29, 2018, Menchu asked Multnomah County Employee Health and Benefits about benefits. Kristin Wray, from the Multnomah County Employee Benefits Office, told him that despite his new classification, he is not eligible for benefits because he is still classified as an on-call worker, and needed to be a regular, permanent employee to be eligible.

48. On November 9, frustrated by the run-around he was experiencing, Mr. Menchu filed *pro se* an Unfair Labor Practice (ULP) with this Board (ERB), based on:

    i.    ORS 243.672(1)(a), interference with Mr. Menchu's right to join a labor organization;

    j.    ORS 243.672(1)(c), discrimination in regard to hiring or other terms and conditions of Menchu's employment for the purpose of discouraging him and his membership in the union;

    k.    ORS 243.672(1)(f), refusal of Multnomah County Health Department's (MCHD) to comply with ORS 243.650(7)(a), by restraining Mr. Menchu from joining the union through its failure to properly classify him as a regular employee instead of an on-call employee.

He asked that MCHD be found in violation of the statutes he listed; that they be enjoined

from such violation in the future; that he be awarded retroactive pay since March of 2018 when they should had or must had known that he should have been classified as a regular, full-time employee eligible for union membership; that MCHD be enjoined from retaliating against him for his efforts to correct the status of the certified health care interpreters; and any other relief the Board deemed just, proper, and equitable.

49. On November 25, 2018, ALJ Martin Kehoe set the following issues to be resolved at a hearing: Did the Multnomah County Health Department violate ORS 243.672(1)(a), (c), and (f) by failing and/or refusing to include Jerry Menchu in the American Federation of State, County and Municipal Employees Local 88 bargaining unit? The ALJ requested that the parties notify him of suggested changes prior to service of the complaint.

50. On or around November 26, 2018, the Oregon Health Authority published a notice of proposed rulemaking to extend the expiration date for HCI Letters from 3 years to 4 years. Menchu's Certification letter was among those pending approval. The amendments to OAR 333-002-120, -140, and -150 were filed January 28, 2019 and became effective February 1, 2019. Mr. Menchu's certification had already been approved.

51. On December 10, Respondent's attorney suggested a different statement of the issue: Did the County violate the statute by utilizing the employee in a manner more consistent with a regular status employee and then failed to properly classify him as a regular employee? On the same date, Menchu stated his preference for the ALJ's formulation of the issue.

52. On or around January 2, 2019, the parties indicated a willingness to mediate the issue, but mediation was never undertaken.

53. On January 16, Menchu filed a discrimination complaint with the Civil Rights Division of Oregon's Bureau of Labor and industries "BOLI". [EXB 3]

54.Menchu continued to press both Multnomah County and the union about the situation. On February 5, 2019, Eben Pullman, the council representative for AFSCME Council 75, indicated that they were working with County Labor Relations (CLR) regarding the situation. However, he then asked if Menchu was currently certified, to prevent further delays, since the CLR had indicated that might have caused delays. CLR should have been aware of the extension of the certification letters from 3 years to 4 years and should not have delayed anything awaiting Mr. Menchu's updated certification letter.

55.On March 21, 2019, ALJ Kehoe served the Complaint and Notice of Hearing on the Parties.

56. On April 9, 2019 Menchu secured legal representation for the ERB and BOLI cases

57.On April 10, 2019 the ALJ and Respondent's attorney were notified that Mr. Menchu had secured legal representation. The hearing was reset to July 16 and 17, 2019.

58.On April 15, 2019, Debi Smith from MCHD Human Resources and Brieshone D'Agostuni, the Operations Supervisor of Health Center Operations, met with Menchu to "follow up on outstanding issues". At that meeting, he was told that MCHD's payroll system had overpaid him for overtime; that his paychecks would be audited; he would need to refund overpayments; that it had come to their attention that he was working extensive overtime; and that as an on-call he should know that he should be working no more than 20 hours a week.

59.Nothing in Oregon Administrative Regulations Chapter 333, Multnomah County Personnel Rules, the MCHD Interpreter Handbook, or the AFSCME Local 88 CBA Article II, section IX On-Call Employee limits the amount of time that an on-call employee can work.

60.In mid-June 2019, Mr. Menchu began experiencing significant cutbacks to the hours that he worked, being assigned only half-days of work. He learned that non-certified interpreters have been interpreting at the clinics in hours during which he has no assignments.

**61**. On July 16, 2019 Menchu's attorney assisted him in rewriting and resubmitting his Oregon's Bureau of Labor and Industries "BOLI" discrimination complaint for clarity on his original complaint and to add his retaliation complaint. Menchu believed that MCHD has discriminated against him because of his race and association with minorities and his retaliated against him for submitting complaints to the Oregon BOLI and ERB.

**62**.August 1, 2019. Menchu's lawyer names only one person to testify in his ERB hearing on August 7, and this is NATALY RUMANOVSKY and but suddenly Menchu's lawyer after turning in the witness list for the ERB hearing, then turns around on the same day August 1, and surprises Menchu by advising Menchu that he should drop the case before going to trial. Menchu had no alternative but to trust in his lawyers such short notice advice and later August 2, drops his case.

**63**.On August 19, 2019. Menchu receives a notice from BOLI letting him know that he has 23 days to submit any proof to defend his case.

**64**.In August 22, 2019, Menchu is audited by his employer and it is discovered that he owes his employer a total of $10.24 as promised in the April 15, 2019 meeting with Debi Smith from MCHD Human Resources and Brieshone D'Agostuni, the Operations Supervisor of Health Center Operations ¶**58**.

**65**.Menchu is surprised that his lawyer does not contact him regarding this letter information sent to him by Oregon Bureau of Labor and Industries "BOLI" that was primarily sent to her ¶**63**, so Menchu contacts the investigator explaining that he believes his lawyer has abandon the case and the investigator contacts Menchu's lawyer to rectify and Menchu's lawyer in return says that indeed she is no more working with Menchu and sends all of her gathered information to

Menchu on September 1, 2019. Menchu was surprised that his Lawyer had not contacted BOLI ahead of time to confirm that she was no longer working for him.

**66**.September 10, 2019, Nataly Rumanovsky receives an email explaining that for now and on she and all other interpreters will only get less than 20 hours a week and starting October 1st, she starts getting from MCHD only 1 to 3 appointments a day or approximately 10 appointments a week equivalent to: $200 x week. Before this, she was making approximately 32 hours x week. MENCHU started to feel the retaliation as well, since October 4' 2019 his appointments dropped from 10 appointments a day to only 2 or 3 per day. Menchu was losing approximately $700.00 x 15-day period, however he is rescued from the MCHD's clinics who retain him for most rest of the day because of their need for Spanish interpretation.

**67**.On September 12, 2019 Menchu submits his 23-day notice information to BOLI

**68**.In October Menchu spoke over the phone with Sirina Haseen MCHD call center worker Language Services and was told that there was a lot of interpreting appointments for Menchu for October but because of orders from her supervisor who is also Menchu's supervisor, Ms. Gabriela Mora, she had to take Menchu's name off of them in September that were already scheduled for Menchu and re-assigned them to someone else, Ms. Hassen explained: *"I believe these orders came from above"*.

**69**.On October 8, 2019 received a note that there is just 1 appointment for Menchu for tomorrow.

**70**.On October 9, 2019 Menchu sends a desperate message to his former lawyer to see if she can open a new case of retaliation against his employer MCHD because Menchu believes that his ERB, BOLI Claim is causing retaliation from his employer towards him and Nataly Rumanovsky

who participated in his lawsuit and complaint against his employer. Menchu's former lawyer explained that there is nothing she believes can be done.

71. In October 24, 2019, Menchu discovers that MCHD has now added to its Medical assistance "MA", and Office assistance "OA" 1 and 2 a new job obligation as part of their job description to work: *"As needed, serve as interpreter for non-English speaking patients throughout their visit to the clinic; translate all necessary verbal communication between care provider and patient."* Menchu immediately complains to the United States Department of Health and Human Services "HHS" with the title: *"Multnomah County is using its workers OA 1 and 2 and medical assistance to interpret for its LEP/providers without a being Qualified"* and in November 1, 2019, submits through email a complaint to the Oregon Health Authority "OHA" and Oregon Department of Human Services "DHS in violation of OAR 333-002-0040". Then on November 8, Mavel Morales OHA Equity and Inclusion Division civil rights investigator, contacted Multnomah County's Civil Rights Administrator and Manager, Civil Rights Policy Unit of Multnomah County Office of Diversity and Inclusion, Ms. Neisha Saxena and forwards Menchu's email complaint sent to OHA and in return Ms. Saxena contacts Menchu on November 22. Both Menchu and Saxena have a conversation over the phone where Menchu explains his complaint.

72. On December 12, 2019 Menchu sends an email to the Multnomah County Equity and Inclusion regarding MCHD using non-qualified employees as interpreters, again the Civil Rights Administrator Ms. Neisha Saxena answers Menchu on December 16 and explains:

*"Hello Mr. Menchu. We understand that you have filed a complaint with Oregon Health Authority making the same allegations relating to qualified interpreters in health clinics. The County Health Department is in the process of responding to that*

*complaint which overlaps with this one. As a result, we await the outcome of that complaint, which will determine the outcome of this one."*

Menchu never heard back from Ms. Neisha Saxena again and up to this date has not changed the referred job descriptions. [EXB 4]

73. On December 17,2019 Menchu starts receiving only three appointments a day and they are only appointed for either 2 in the morning and 2 in the afternoon.

74. On December 18, 2019 BOLI makes a dismissal MEMO

75. On December 24, 2019 Menchu forwards to Eben Pullman, the council representative for AFSCME Council 75 his complaints regarding MCHD using its workers as non-qualified interpreters, and in January of 2020 has a meeting between Mr. Pullman, Menchu and Nataly Romanovsky where Mr. Pullman insures Menchu and Ms. Romanovsky that he will look in to it. Menchu at the date to this complaint has not heard back from Mr. Pullman.

76. On January 7, 2020 BOLI formally dismisses Menchu's case and writes up a 90 day right to sue. [EXB 5]

77. On January 7, 2020 (the same day that BOLI writes the 90 day right to sue) Menchu receives an email from his former lawyer explaining that because she has been suffering a heavy workload, she had not been able to contact Menchu but as said prior, was not able to do anything regarding the retaliation against him from his employer but was able to gather a few lawyer names to defend him in a new retaliation case if he wanted.

78. Right after the 90 day right to sue letters received from BOLI, Menchu started to get almost immediately a few more appointments but not like he use to get before June of 2019.

**79**. On January 14, 2020 Menchu is contacted by U.S. Dept. of Health & Human Services Office of Inspector General – Office of Investigations Special Agent Jessica Knight regarding Menchu's HHS complaint ¶**71** and explains that she would like to know further an to submit whatever information to her. On January 15, 2020 Menchu send through email, his gathered information.

**80**.On January 31, 2020 Menchu receives a letter from the EEOC giving him a 90 day right to sue his employer based on his BOLI complaint. [EXB 6]

**81**. On March 5, 2020 Menchu through a few employees' associates discovers that on March 5, there was a MCHD-wide meeting to discuss how to keep safe and others regarding the Corona virus, Menchu was not invited to attend.

**82**.Menchu receives a letter from HHS regarding his filed complain and explains that the information alleged in complaint ¶**71** could be a Title VI National Origin discrimination and that HHS will take further action and the case has been sent to an investigator. [EXB 7]

**83**. April 3, 2020 Menchu receives an email from his supervisor Gabriela Mora explaining that Menchu will not be able to use his sick leave to cover his 2 week pay period due to Menchu's March 16th feeling of illness because he is an On-call and has not been assigned to any shift since the Oregon's January 17th Corona virus emergency proclamation.

**84**.Menchu still continues On-call with code 8002, discriminated and retaliated and is now being sent to only English deficient beneficiaries who have County eligibility, leaving out the other publicly insured minority beneficiaries.

**85**. Menchu believes that due to MCHD bad faith acts against him, he would more possibly than not, continue receiving a harsher retaliation against him and Nataly Romanobsky after the BOLI and EEOC 90 day to sue letter has expired and if Menchu does not take legal action.

**86**.As Menchu is not yet considered a union member, Menchu has no union grievance mechanism to follow and no contractual remedies to exhaust. Nevertheless, Menchu has made every possible effort to resolve this matter through Local 88 and MCHD with reference to the contractual processes defined in the CBA. Under the CBA Article 3 (III) In the event of disagreement as to the status of newly created or modified classifications or positions, determination of status shall be in accordance with unit clarification procedures as provided by Oregon law."

**87**.Under ORS 243.672(3) an injured party may file a complaint not later than 180 days following the occurrence of an unfair labor practice. Mr. Menchu filed his complaint within 180 days of October 11, 2018, when he was told that in spite of the reclassification of the Health Care Interpreter position, he would remain an on-call employee.

## AS AND FOR FIRST CAUSE OF ACTION

### (Federal 28 U.S.C. § 2202 (injunctive relief)

**88**. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs **16, 20-22, 24-25, 66, 68-69, 72-73, 75, 78, 82**. above.

**89**. The discrimination towards Menchu in his employment has a ripple effect in:

(a).Excluding English deficient beneficiaries by possible making them feel marginalized, unwelcomed in accessing programs and activities by not offering them

a lesser discriminatory alternative as in using Menchu in its fullest capacity whenever at their disposal whenever possible creating an obstacle in entrance and discrimination in violation of title VI against its English deficient federal sponsored beneficiaries. The United States should have interest in this matter pursuant to **28 U.S.C § 517** to ensure that the national origin nondiscrimination protections of **Title VI** of the Civil Rights Act of 1964, **42 U.S.C §§ 2000d-2000d-7**, and its implementing regulations, **28 C.F.R. Part 42 and 34 C.F.R. Part 100** (Title VI), are applied properly. The discrimination that Menchu is suffering will negatively impact upon those intended beneficiaries.

(b). Negligent: Multnomah County "Defendant" owe a duty to its beneficiaries to exercise reasonable care in their regulation and management of the Health System. To offer a non-necessary poor-quality service in language access when in meantime there is a higher quality alternative immediately available is negligently breaching their duty of care to its beneficiaries to fail well below the applicable standard of care and directly, proximately, and legally the possibility in causing harm to its English deficient beneficiaries.

90.Menchu's employment concerns the following 604, **42 U.S.C 2000d-3** when the employment practice discriminates against the beneficiaries of the program receiving assistance. Defendant owe a duty to its federal sponsored beneficiaries to ensure that all federal moneys be kept bleached from any discrimination according to **42 U.S.C 2000d** *Et Seq*. by offering the best quality in service at hand whenever possible. Menchu has made every possible effort to resolve this matter to detour the Defendant from continuing this illegal act by addressing this with his employer's diversity department, for example, he first

complained to the Oregon Health Authority on April 25, 2017 and on August 29, 2017 to the U.S. Department of Health and Human Services (HHS) Office of Civil Rights (OCR)¶**20**. Menchu had meetings with Jonathan Ostar, Multnomah County's Civil Rights Administrator with several other employees in the executive level of the County ¶**21.** Then in October 24, 2019, Menchu complains yet again to the United States Department of Health and Human Services "HHS" and in November 1,  2019, submits through email a complaint to the Oregon Health Authority "OHA" and Oregon Department of Human Services "DHS in violation of OAR 333-002-0040" Then on November 8, Mavel Morales OHA Equity and Inclusion Division civil rights investigator, contacted Multnomah County's Civil Rights Administrator and Manager, Civil Rights Policy Unit of Multnomah County Office of Diversity and Inclusion, Ms. Neisha Saxena and forwards Menchu's email complaint sent to OHA and in return Ms. Saxena contacts Menchu on November 22. Both Menchu and Saxena have a conversation over the phone where Menchu explains his complaint. ¶**71**

## AS AND FOR SECOND CAUSE OF ACTION

**(Federal Race Discrimination in Violation of 42 U.S.C §§ 2000d-2000d-7 *et seq.*)**

**91**. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs **15-84** above.

**92**. 42 U.S.C. §2000d provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**93**. 42 USC § 2000d–4a – Multnomah County is a local government and entire operations falls under the meaning of "Program or activity" and "program" defined in (3)(A) and (3)(A)(ii).

Defendant subjected plaintiff to discrimination, different treatment, retaliation and has denied him the right to be included from participation in, be permitted the benefits of, under program or activity receiving Federal financial assistance, this includes the entire operation of this local government and this traditionally includes the administration, and labor operations of this local government.

## AS AND FOR THIRD CAUSE OF ACTION

### (Federal Race Discrimination in Violation of 42 U.S.C §§ 2000e-2000e-3 *et seq.)*

**94**. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs **15-84** above.

**95**. 42 U.S.C. §2000e provides that no employer shall, on the ground of race, color, or national origin, discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, national origin; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.

**96**.Menchu's employer brough together a group of protected class citizens who are Qualified Health care Interpreters and purposely offered them a less-favorable terms and conditions in pay based on their Race and National Origin by classifying them as On-Call and by coding them with 8002, a code reserved for temporary utility workers even when working full time that had the effect of marginalizing them by denying the same rights in

their jobs as offered to workers in other roles in his employment. Menchu's job classification segregates and has a "detrimental effect upon Race or National origin citizens" and contributes to "a sense of inferiority in his employment."

97.Menchu was treated with different terms and conditions in his employment based on his Race, Color, National Origin by classifying him as an On-call and under code 8002 which is reserved for temporary utility workers when in reality working as full-time and with this action, not allowing him to obtain union membership and with this action, not allowing Menchu to obtain all of the benefits as in facts contain in paragraphs **35-40** and **81** above.

98.Menchu and other interpreters were given a non-bona-fide treatment by their employer by forcing them to obtain their certificate that qualified them as Qualified Health Care Interpreters and who all interpreters by the nature of their profession are predominantly of Race or National Origin when other employees who were working in positions that are not exclusive of protected class citizens to be allowed to interpret for their English deficient patients without a certificate and to gain a 4% wage increase to use their untrained bilingual skills to interpret and by this action, also discriminating on its Race and National Origin beneficiaries. Menchu alleges that it should be enough proof for a reasonable man to assume that if by holding in such low regard and discriminating against its National Origin beneficiaries then with the same bias mentality discriminates against Menchu and others Qualified Health Care Interpreters who are all of Race and/or National Origin protected under **Title VI**.

99.Menchu has never been invited or encouraged to participate in any privileges offered to other as in the above in paragraph **15**

**97. §2000e–3:** Menchu FIRST sent On July 19, 2018, his first grievance by email to Multnomah County Health Maintaining, disputing his classification, since he works full time **¶28**. SECOND: On July 19, 2019 Menchu filed a discrimination complaint based on national origin and race (Hispanic) with Marissa Madrigal, the MCHD Chief Operating Officer, stating that the County had discriminated failing to give him fringe benefits as to given to other employees working full time and to include the interpreters in the Local 88 bargaining unit because of discrimination against the largely minority and foreign-born interpreters and their association with minority and foreign patients **¶29**. THIRD On November 9, 2018 frustrated by the run-around he was experiencing, Mr. Menchu filed *pro se* an Unfair Labor Practice (ULP) with this Board based on:

a.   ORS 243.672(1)(a), interference with Mr. Menchu's right to join a labor organization;

b.   ORS 243.672(1)(c), discrimination in regard to hiring or other terms and conditions of Menchu's employment for the purpose of discouraging him and his membership in the union, and soon after MCHD was notified **¶48**.

FOURTH: On January 29, 2019 Menchu filed a discrimination complaint with Oregon Bureau of Labor and Industries "BOLI" and soon after, MCHD was notified **¶53**. FIFT: On July 16, 2019 Menchu's attorney assisted him in rewriting and resubmitting his Oregon's Bureau of Labor and Industries "BOLI" discrimination complaint for clarity on his original complaint and to add his retaliation complaint. Menchu believed that MCHD has discriminated against him because of his race and association with minorities and his retaliated against him for submitting complaints to the Oregon BOLI and ERB **¶61**. By coercing Mr. Menchu to give up his campaign for regular status and union membership by cutting Mr. Menchu's work hours after he successfully campaigned to have MCHD re-assess the status of the certified Health Care Interprets. Menchu and other Qualified interpreters were retaliated by after Menchu complained and secured a

MENCHU v. MULTNOMAH COUNTY: Plaintiff preliminary statement of issues

lawyer On April 9, 2019 ¶**56** for trying to secure his rights to obtain fringe benefits and union membership where he denounced his employer's discrimination and intent to block his membership through bad faith by using different terms and conditions. The facts contain in paragraphs **58-61, 66, 68-70, 73.** above.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(ORS §659A.030(1)(b) – Oregon Employment discrimination, Race and National Origin.)**

Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs **15-84** above.

**98.** Multnomah County Health Department  discriminated against Menchu's in the terms and conditions of his employment through paying other non-certified full-time employees with union membership and benefits to do health care interpreting, in violation of  OAR 333-002-0040(1)(g) and (2) or (3), but  refusing to recognize Menchu as a full-time employee qualified for union membership with the concomitant union wages and benefits although he had worked as a certified health care interpreter at least full time since 2015.

## AS AND FOR A FIFT CAUSE OF ACTION

**(ORS §659A.030(1)(f) – Retaliation for filing complaints with "ERB" and "BOLI".)**

**99.** Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs **15-84** above. The Multnomah County Health Department violated ORS 659A.030(1)(f) by discriminating against Menchu by auditing his paychecks, cutting his hours, and forcing him to interview for his own job if MCHD ever posts regular-status Health Care Interpreter positions, all because he brought a complaint against MCHD. Complainant is injured

by this violation, in the reduction of the work hours that he had been working and the corresponding pay, and the implied threat that he could lose his job altogether by having to re-interview for his position simply because of a reclassification  The facts contain in paragraphs **58-61, 66, 68-70, 73.** above.

## JURY DEMAND

**100**. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELEAF

WEREFORE plaintiff Jerry Menchu prays for judgment against defendants as follows:

1. Issuing declaration that Defendants have violated the Plaintiff's Title VI and VII rights under Act of 1964, 42 U.S.C. §2000d, *et seq.,* his rights under 42 U.S.C. §2000e, *et seq.;*

2. Enjoining defendants, their officers, employees, successors, franchisees, agents and all other persons in active concert or participation with any of them, from engaging in any act or practice which, on the basis of race and national origin, denies or abridges any rights secured by the Civil Rights Act of 1964, to prevent defendants from so acting in the future;

3. Awarding plaintiff damages incurred as result of these violations to his federal, state, and common law rights;

   a. Require the MCHD to convert him immediately to a regular status, union-eligible employee under the new classification;

   b. Enjoin the MCHD from retaliating against him;

   c. Enjoin the MCHD from using non-certified health care interpreters when certified health-care interpreters are available;

   d. Award damages including lost pay and benefits, medical costs since 2015, when MCHD must has known or should had known that he must had or

should have been classified as a regular, full-time employee eligible for union membership or to the extent permitted by this court;

4. Awarding punitive damages for ignoring Menchu's grievance letter sent to his employer and for not acting according to regulation in regard to its discrimination policies;

   a.   estraining Menchu's access to union membership by refusing to recognize him as a full-time employee eligible for union membership and the concomitant union wages and benefits although he had worked at least full time since 2015;

   b.   coercing Menchu to give up his campaign for regular status and union membership by cutting Menchu's work hours after he successfully campaigned to have MCHD re-assess the status of the certified Health Care Interprets.

   c.   Menchu is injured by this violation. He remains in on-call status, ineligible for the higher wages and benefits available to union members, such as the   just-cause termination protection and grievance procedures, the bi-lingual and culturally-specific knowledge differentials paid to union employees, reimbursement for the use of his personal car and for parking when going to multiple appointments during a day, and reimbursement for training he must take to maintain his certifications, among other benefits. His income has been reduced due to the reduced hours.

5. Awarding §1988 attorneys' fees;

6. Awarding plaintiff's cost and disbursement; *and*

7. Granting such other and future relief as the Court may deem just, proper and equitable.

Menchu's demands exceeds the amount of $10,000 Dollars.

Please accept this 39 PLAINTIFF PRELIMINARY STATEMENT OF ISSUES with 7

EXHIBITS in numerical order.


Dated:    Portland, Oregon

    April 3, 2020

Jerry Menchu
plaintiff
1644 NW Bridgeway Ln.
Beaverton Or. 97006
Ph:503-442-2351
Menchu36@gmail.com

# Exhibit 01

05 pages



**DEPARTMENT OF HEALTH & HUMAN SERVICES**          **OFFICE OF THE SECRETARY**

Voice - (800) 368-1019                                                            **Office for Civil Rights, Pacific Region**
TDD -   (800) 537-7697                                                                      **90 7ᵗʰ Street, Suite 4-100**
FAX -   (415) 437-8329                                                                      **San Francisco, CA 94103**
http://www.hhs.gov/ocr/

December 19, 2017

Mr. Jerry Menchu
1644 NW Bridgeway Lane
Beaverton, OR 97006

OCR Transaction Number: 17-280827

Dear Mr. Menchu:

On August 29, 2017, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), Pacific Region, received your complaint alleging that Multnomah County Health Department (MHD) is not compliant with Title VI of the Civil Rights Act of 1964 (Title VI)[1] and Section 1557 of the Affordable Care Act (Section 1557).[2] Specifically, you allege that MHD utilizes members of its workforce to provide language assistance services as Qualified Bilingual/Multilingual staff without first requiring the workforce members to demonstrate that they are qualified to provide such services. You also allege that MHD utilizes Qualified Bilingual/Multilingual staff to provide language assistance services in situations where reliance on Qualified Bilingual/Multilingual staff for this purpose may not be appropriate, given potential issues with accuracy, effectiveness and/or impartiality. This allegation could reflect noncompliance with Title VI and/or Section 1557.

Thank you for bringing this matter to OCR's attention. Your complaint is an integral part of OCR's enforcement efforts.

OCR enforces Federal civil rights laws which prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and under certain circumstances, sex and religion. OCR also enforces the Health Insurance Portability and Accountability Act's Privacy, Security, and Breach Rules.

Title VI protects persons eligible to receive federally assisted benefits or services from discrimination on the basis of race, color, or national origin. Title VI provides that, "no person in the United States shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving federal financial assistance from the Department of Health and Human Services." 45 C.F.R. § 80.1. Recipients of federal financial assistance must take reasonable steps to ensure that program participants, including persons who are limited English proficient (LEP), have meaningful access to their programs and services. This means that, when the provision of free language assistance services are necessary to comply with Title VI, recipients must provide these services in a manner that ensures LEP clients are served as effectively as their English speaking clients.

Section 1557 expands on the protections provided by Title VI. It provides that "an individual shall not, on the grounds prohibited under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) [race, color, national origin], Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) [sex], the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.) [age], or Section 504 of

---

[1]  Title VI of the Civil Rights Act of 1964, as amended, 42 United States Code (U.S.C.) §§ 2000d et seq., as implemented by 45 Code of Federal Regulations (C.F.R.) Part 80.

[2]  Section 1557 of the Affordable Care Act 42 U.S.C. § 18116

*Exb 1 P.1 of 2*

the Rehabilitation Act of 1973 (29 U.S.C. 794) [disability], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of ACA....]."

Under Section 1557, Language Assistance Services may include, but are not limited to oral language assistance, written translation, and taglines. Oral language assistance includes interpretation in non-English languages provided in-person or remotely by a qualified interpreter for an individual with LEP. Oral language assistance also includes the use of qualified bilingual or multilingual staff to communicate directly with individuals with LEP. 45 C.F.R. § 92.4.

Qualified bilingual/multilingual staff must demonstrate to the recipient that they are proficient in English and at least one other spoken language, including any necessary specialized vocabulary, terminology and phraseology, and are able to effectively, accurately, and impartially communicate directly with individuals with LEP in their primary language. 45 C.F.R. § 92.4. For example, a qualified bilingual/multilingual nurse who is competent to communicate in Spanish directly with Spanish-speaking individuals may not be a qualified interpreter for an individual with limited English proficiency if serving as an interpreter would pose a conflict of interest with the nurse's treatment of the patient.

Title VI also indicates that OCR shall "seek the cooperation of recipients in obtaining compliance ... and shall provide assistance and guidance to recipients to help them comply voluntarily..." 45 C.F.R. § 80.6(a). In fulfilling our obligation to investigate complaints filed with this office, OCR conducts a thorough and detailed review of all complaints (as well as any other information provided to OCR, if applicable), and requests and obtains additional relevant documentation when necessary. After conducting such a review of your complaint, OCR has, pursuant to our authority, determined to resolve this matter through the provision of technical assistance to MHD regarding the scope of its obligations under Title VI and Section 1557. Should OCR receive a similar allegation of noncompliance against MHD in the future, OCR may initiate a formal investigation of that matter.

For your informational purposes, OCR has enclosed material regarding Title VI.

Based on the foregoing, OCR is closing this case without further investigation, effective the date of this letter. OCR's determination, as stated in this letter, applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Eric Press, Investigator, at (415) 437-8321.

Sincerely,

Michael Leoz
Regional Manager

Enclosure: Rights of LEP Individuals under Title VI of the Civil Rights Act of 1964

Exb 1 p. 208

# Exhibit 02


01 page

## Fwd: Language Access Update

jerry menchu <menchu36@gmail.com>
Fri 4/3/2020 5:02 PM
To: Ods00954Cpc <Ods00954Cpc@OfficeDepot.com>

---------- Forwarded message ---------
From: **Jerry Menchu** <jerry.menchu@multco.us>
Date: Fri, Apr 3, 2020, 3:58 PM
Subject: Fwd: Language Access Update
To: Menchu, Jerry <menchu36@gmail.com>

---------- Forwarded message ---------
From: **Jonathan OSTAR** <jonathan.ostar@multco.us>
Date: Fri, Sep 29, 2017, 11:47 AM
Subject: Language Access Update
To: Victoria CROSS <victoria.v.cross@multco.us>, Jade DODGE <jade.dodge@multco.us>, Jerry MENCHU <jerry.menchu@multco.us>
Cc: Benjamin DUNCAN <benjamin.e.duncan@multco.us>

Hi folks,

Things have been very busy with workforce equity here at the county, but we've been able to make some solid progress on the language access initiative over the past several weeks.

Here is an updated draft of the baseline survey for frontline staff and managers.

This draft is based on the feedback from our last meeting, and I am in the process of getting additional feedback from reps at Health and DCHS, and specifically from the Language Services program. It's still a little long, and needs to be adapted for managers first, and then frontline staff second, but it's a big improvement on the original version, so thank you!

Our goal to roll this out is late-October, so in about 3-4 weeks, which should give us ample time to finalize the content and the process.

As a reminder, we will then review the assessment and begin developing a training curriculum. During this time, we will also be finalizing our guidance document for the DEI-2 policy, which will be disseminated prior to any training.

I put out a scheduling invite for a meeting on all this for Monday, October 9th from 2:30 to 3:30 in the Copper Room on the 5th Floor of the Multnomah Building. I'm happy to adjust the time to meet anyone's scheduling issues; I noticed that Tuesday from 3-4 PM works as well, so please let me know if that's better.

Jerry, please let me know if you can make either of these times, or please suggest another time when you are free. If not, let's set up a meeting for just the two of us so I can catch you up to speed and answer any of your questions.

Exb #2   P.#

I hope you all have a great weekend,
Jonathan


---

Jonathan Ostar
Civil Rights Administrator, Multnomah County
501 SE Hawthorne Blvd., 6th Floor
Work: (503) 988-4201
*Pronouns: he/him/his*

Exb #2  p.2

# Exhibit 03

02 pages



**Oregon Bureau of Labor and Industries**
**CIVIL RIGHTS DIVISION**
**Employment Discrimination Questionnaire**

Please Print Clearly. (This is not an official complaint.)

I am submitting this questionnaire in confidence and request that my address, telephone numbers, and email address not be disclosed.

☐ Yes ☑ No

YOUR NAME  Serry  A.  Menchu
(First)      (Middle Initial)      (Last)

Mailing Address  1644 NW. Bridgeway LN.

City/State/Zip  Beaverton OR. 97006

Home Phone (503) 442-2351      Other Phone (503) 442-2351

E-Mail Address  Menchu36@gmail.com

Date of Birth [redacted]      Gender: M.

Race Mestizo  National Origin Latino      Are you a veteran? No
Mestizo
Best time to contact you (between 8 a.m. and 5p.m.) Any time Other time

**CONTACT (a person who does not live with you but can contact you):**

Name  Harriet Light      Home Phone (503) 997-9440

Address 7725 Basswood Dr.   City/State/Zip Chattanooga TN.
37416

ATTORNEY (if any) representing you in this civil rights complaint:

Name None      Phone

Firm Name

Address      City/State/Zip

OSHA ☐    State ☐    EEOC ☐

1

exb #3  P.1

**This section for office use only:**

File # 18-06957
Q Sent: 1-7-19 By: X PC:

Priority:

**RECEIVED**

JAN 16 2019

CIVIL RIGHTS DIVISION
PORTLAND OFFICE

Tort Notice Sent By:
INT:_____ Date:_____

Impact Entry Done By:
INT: HC Date: 1-16-19

Intake Assigned To:
INT: Monica Date: 1-22-19

Charge Drafted By:
INT: MM Date: 1/29

Contract  Juris  Basis
AG    EM    AG
EE          RC
            NO

Branch 1  County MLt

First Contact: 1/16/19

First DOD: 1/1/18

Most Recent DOD: 1/29/19

Continuing Action: (Y)  N

SX:  M  F
RC:      NH
NO:      HLGO

RP Type G  Size A/50+

Contract: DP (AG)(EE) EP  GN

Basis: OA  GM  PM
OO

Issues: WI  B2  B3
B1  01

**EMPLOYER INFORMATION:**

Company Name Multnomah County oregon (Heath Dep.)

What is the company name on your paycheck? Multnoma County Oregon

Phone (503) 988-3309          Type of Business Heath

Workplace Address 501 SE. Hawthorne, Suite 400

City/State/Zip Portland OR. 97214-3586 County Multnomah Co.

Mailing Address (if different) the Same as above

Headquarters Address (if known): Same as above

How many employees work for this employer nationwide? Aprox 5,000

How many employees work in Oregon for this employer?

1–5___ 6–14___ 15–20___ 21–24___ 25–49___ 50+ ✓

Are/were you employed by a temporary agency? Yes (No)

If yes, name of agency _____

**Describe your employment status.** Choose *one* of the following rows:

| Complete this row if you were discriminated against when you applied for a job or promotion | Position applied for: | Date applied: | Date informed you did not get the position: |
|---|---|---|---|
| Complete this row if you are a current or former employee | Job title: Interpreter Heath Care Date of hire: 6/6/2013 | Choose one: ✗ still employed ___ fired ___ laid off ___ resigned | If you are no longer working for this employer, date when your job ended: |

**I was subjected to an unlawful employment practice based on one or more of the following:**

| | | |
|---|---|---|
| ☒ Race/Color | ✗ National Origin | ___Injured Worker (complete pg. 5) |
| ___Sex/Gender | ___Sexual Harassment | ___Sexual Orientation or Gender Identity |
| ✗ Age | ___Religion | ___Oregon Family Leave (complete pg. 8) |
| ___Whistleblowing | ___Disability (complete pg. 7) | ___Domestic Violence Victim (Complete pg. 9) |

___Veterans Preference (Complete pg. 10)

___Oregon Sick Leave (Complete pg. 11)

___Reporting or opposing a workplace health or safety hazard (OSHA) (complete pg. 6)

___Other protected class_____
(See back of information page for a list of protected classes.)

2

Exb #3 p.2

## REQUIRED INFORMATION - YOU MUST COMPLETE EACH SECTION ON THIS PAGE

The first date I was discriminated against was: _Perpetual discrimination_

The most recent date I was discriminated against was: _Perpetual document_

1. Briefly describe the harm(s) you are complaining about (e.g., termination, discipline, suspension, failure to hire or promote, harassment, reduction in hours, failure to reinstate):

Based on Oregon Equal Pay act. I am not being Compensated equally similar to other employees with equal skills, effort and responsabilities; terms and conditions. Compensation as: benefits and fringe benefits as in: ORS 652 210 (5)(1)

2. What reason did your employer give for the action(s) you are complaining about?

Said they will Fix the Problem and then didn't do anything but give a $2.00 rise

I have already filed a complaint with another enforcement agency about these issues. Yes / No (Circle one)

If yes, what agency? _NO_ _____ Status of complaint at this time? _____

3. Describe specifically what the employer did that you think was an unlawful employment practice based on the protected class or activity stated above. *Include the specific action that you think is unlawful, what happened, who did it, and why you think it was because of your protected class or activity.* Use additional pages if necessary.

Date: _July 19, 2018_    Harm: _Refused to pay benefits as in the above_

Description: Menchu submitted his Grievance Complaint to the Specialist Chief Operating Specialist Marissa Madrigal to explain the County's Position as to why Menchu has not been paid benefits as in: ORS 243.105 (4)(a), benefits such as: Merit Increase, Healthcare Benefits, Sequencing of leaves, Paid vacation leave, Paid Holidays, Cost of Living, trimet bus pass. The County has not done anything to remedy Menchu.

Date: _July 19, 2018_    Harm: _Age discrimination and National OR. Race._

Description: Menchu in his Grievance Complaint explaind he believed he was being discriminated based on age, race, and/or age. Menchu is 49 years of age and does not get benefits as truth and belief other lesser than 40yr are. 40yr are. Menchu ~~the through~~ through truth and belief believes that National origin, race was a true factor based on Menchu obtaining a lesser treatment than other white, by not being paid equal as other whits.

Exb #3 P.3

3

4. List the name(s) and contact information of anyone who has first-hand knowledge of the harm(s) you are alleging. List your best witness(es).

Witness Name: Marissa Madrigal ____ Contact phone: 503-988-2999

What did this person witness? Miss Magnigal has first knowlage of this matter. She is Chief operating officer of Multnoma Co. and Meucher submitted his grivcence letter to her.

Witness Name: Erin Murphy ____ Contact phone: 503-988-9855

What did this person witness? Miss Murphy has first khoulage of this matter. She is HR. Analyst Senior and was in contact with me a litle while after meuchu submitted his grivence

Witness Name: Travis Graves ____ Contact phone: 503-988-6134

What did this person witness? Mr. Graves is Chief HR dep. and has firsthand khoulage of this Matter.

5. Was anyone else treated like you under the same conditions (e.g., disciplined by the same manager)? If so, give the person(s) name(s) and explain why you think they were treated that way.

not that I brow of.

6. Was anyone else treated differently than you under the same conditions (e.g., not disciplined by the same manager for doing the same thing you were disciplined for)? If so, give the person(s) name(s) and explain why they were treated differently.

Yes. Meuchu has witnessed many other employes with equal skills, effort and responsabilities, term and condition as Meuchu who are being paid Compensated. as in ORS 652.210(5)(1), and Compansation meutioned in: ORS 243.105(4)

ExB #3 P.4

4

EEOC FORM 131-A (11/09)

# U.S. Equal Employment Opportunity Commission

|  | PERSON FILING CHARGE |
|---|---|
| ┌─                                                   ─┐ | |
| | | **Jerry Menchu** |
| | | THIS PERSON *(check one or both)* |
| | | [X] Claims To Be Aggrieved |
| **MULTNOMAH COUNTY HEALTH DEPARTMENT** | [ ] Is Filing on Behalf of Other(s) |
| **426 SW Stark St 8th Fl** | |
| **Portland, OR 97204** | EEOC CHARGE NO. |
| | **38D-2019-00823** |
| └─                                                   ─┘ | FEPA CHARGE NO. |
| | **EERC190719-11167** |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[X] The EEOC and sent for initial processing to      **Oregon Bureau of Labor & Industries - Civil Rights Division**                 .

*(FEP Agency)*

[ ] The _____ and sent to EEOC for dual filing purposes.

*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race  [ ] Color  [ ] Sex  [ ] Religion  [X] National Origin  [ ] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **August 15, 2019** | **William R. Tamayo,** **District Director** | |

Exb #3 P.5

# BUREAU OF LABOR AND INDUSTRIES
## CIVIL RIGHTS DIVISION
### CASE INDEX

Complainant: Jerry A Menchu
Respondent: Multnomah County Health Department
BOLI No.: AGEMAG190226-10283
Investigator: Jessica Smith

| TAB | ITEM | DATED | RECEIVED | SOURCE |
|-----|------|-------|----------|--------|
| 1 | Complaint | | 2.26.19 | CP |
| 2 | Notification Letters | 3.11.19 | | CRD |
| 3 | Intake questionnaire/materials/notes | | 1.16.19 | CP |
| 4 | Notice to CP | | | BOLI |
| 5 | Intake interview | 1.29.19 | | BOLI |
| 6 | Position statement | 3.27.19 | 3.27.19 | RP |
| 7 | Complainant interview | 4.18.19 | | BOLI |
| 8 | CATTY withdrawal | | 8.30.19 | Former CATTY |
| 9 | Emails with CP | | | CP/BOLI |
| 10 | CP evidence | | | CP |
| 11 | Emails with CP | | | CP/BOLI |
| 12 | Emails with CP & Evidence | | | BOLI/CP |
| 13 | Complainant subsequent interview | 9.26.19 | | BOLI |
| 14 | CP evidence | | | CP |
| 15 | Witness interview- N. Romanovsky | 10.29.19 | | BOLI |
| 16 | RFI to RP & RP evidence | | 11.5.19 | RP/BOLI |
| 17 | Emails with CP | | | CP/BOLI |
| 18 | CP evidence | 12.2.19 | | CP |
| 19 | Emails with RATTY | | | RP/BOLI |
| 20 | Emails with RATTY | | | RP/BOLI |
| 21 | Witness interview- G. Mora | 12.5.19 | | BOLI |
| 22 | Emails with CP | | | CP/BOLI |
| 23 | RP evidence | | 12.6.19 | RP Ex5 #3 p.6 |

| 24 | Email from CP & Evidence | | 12.9.19 | CP |
|----|--------------------------|----------|---------|------|
| 25 | Dismissal memo | 12.18.19 | | BOLI |
| 26 | | | | |
| 27 | | | | |

Exb #3 p.7

# Exhibit 04

12
03 pages

**Fwd: Complaint Regarding Health Care Interpreters at Multnomah County**

jerry menchu <menchu36@gmail.com>
Fri 4/3/2020 5:06 PM
To: Ods00954Cpc <Ods00954Cpc@OfficeDepot.com>

📎 4 attachments (17 MB)

Re Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for providerclients,; Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for providerclients,; proof that Multnomah Co. is using its workers as non-certified interpreters.pdf; Multnomah County Health Department and HCI Concerns;

---------- Forwarded message ---------
From: **Neisha Saxena** <neisha.saxena@multco.us>
Date: Fri, Nov 22, 2019, 12:57 PM
Subject: Fwd: Complaint Regarding Health Care Interpreters at Multnomah County
To: <menchu36@gmail.com>

Hi Jerry.  I received this email from Mavel Morales at Oregon Health Authority.  I am generally available today, if you would like to contact me at the number below. Thank you!

Neisha

Neisha Saxena, JD
Civil Rights Administrator
Manager, Civil Rights Policy Unit
Multnomah County Office of Diversity and Equity
Mobile: 971-645-6259
I use: she/her

**Did you notice my font is large?** This is done for accessibility purposes. It is recommended to use at least 14pt font size with Arial or Verdana fonts being the most legible.

---------- Forwarded message ---------
From: **Morales Mavel** <MAVEL.MORALES@dhsoha.state.or.us>
Date: Mon, Nov 18, 2019 at 6:36 PM

Exb #4 p.1

Subject: Complaint Regarding Health Care Interpreters at Multnomah County

To: Neisha Saxena <neisha.saxena@multco.us>

---

**SECURE EMAIL DELIVERY:** This email message was securely transmitted from a sender at Oregon DHS

OHA (dhsoha.state.or.us) to your email system using Transport Layered Security (TLS).

---

Good evening Neisha.  Please see the attached information.  Please confirm receipt and let me know if you have any questions.

Mavel *(Muh-Velle)* Morales

[She | Her | Hers]

OHA ADA Coordinator + Civil Rights Investigator

Oregon Health Authority

Equity and Inclusion Division

Mavel.Morales@state.or.us

971-673-2000 [desk]

---------- Forwarded message ----------

From: Jerry Menchu <manger28@hotmail.com>

To: Morales Mavel <MAVEL.MORALES@dhsoha.state.or.us>

Cc:

Bcc:

Date: Thu, 7 Nov 2019 21:28:14 +0000

Subject: Re: Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for provider/clients,

---

**Think twice** before clicking on links or opening attachments. This email came from outside our organization and might not be safe. If you are not expecting an attachment, contact the sender before opening it.

---

Hi Mavel, I will be available to take your call however I am not a victim in this case, I am performing a whistleblowing act against my employer Multnomah County Health Dept. I will be available perhaps if you need more intake of the incident.

I feel that it is my employer who you should talk to and to send a Cease and desist letter.

Exb #4 P.2

I really don't know what can be fixed by talking to me Mavel, however I am available...

Multnomah County is using its medical and dental assistance and Office assistance (receptionist) to interpret between its patient and providers and this against State and Federal Laws and considered a title VI discrimination violation.

It is illegal for any clinic who receives Medicare/Medicaid grant money or for any State or Local government in Oregon to use workers such as nurses, Dr. assistance as interpreters because of conflict of interest, also it is illegal to use unqualified interpreters. Multnomah County has been abusing its Oregon's English deficient citizens by obtaining grant money from Medicaid/Medicare through Oregon Health Plan to offer good quality interpreting services and in return offers a low quality one.

The United Stated Department of Health and Human Services "HHS" who through grant money to the Oregon Authority sends money for this services obliges Multnomah County to offer qualified interpreting services  and in 2017, sent technical assistance to help educate the County on this because of past complaints to HHS. (please review attachment)

Oregon takes one step further and obligates Multnomah to use only qualified or certified interpreting services, made qualified or certified through the Oregon Health Authority "OHA" through its branch Office of Equity and Inclusion "OEI" and in 2015 it obligated all of its State, Local government and Coordinated Care Organization "CCO's which are a group of united clinics and hospital to comply

It could be a matter of life and death to offer interpreters who are not qualified and in particularly when interpreting diagnosis and directions such as how to take medications.

Such a use of unqualified interpreters is immoral, in particularly when the worker who perhaps learned his/her target language from his/her humble parents who were first comers into the country and who perhaps didn't have a chance to get education in their native county because of poverty.

Ask yourself this, would you feel comfortable allowing your mother to go under the knife not knowing if the interpreter has only the vocabulary of a third-grade education from its native country? These English deficient patients have cero political power and are vulnerable and I think this use unqualified interpreters is discriminatory and goes against title VI of the 1964 prohibit discriminatory agreement of 1964, when the County is receiving funding for qualified interpreters a maybe using the funding for other purposes.

Please review attachment

Thank you for your understanding in this crisis

Jerry Menchu
1644 NW Bridgeway Ln.
Beaverton OR. 97006
503-442-2351
Menchu36@gmail.com

---

From: Morales Mavel <MAVEL.MORALES@dhsoha.state.or.us>
Sent: Thursday, November 7, 2019 12:21 PM
To: Jerry Menchu <manger28@hotmail.com>

Exb #4 P.3

**Subject:** RE: Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for provider/clients,

Jerry, sorry for the delay. Can we touch base next week?  Would next week Tuesday at 2:00 p.m. work?

Mavel *(Muh-Velle)* Morales
[She | Her | Hers]
OHA ADA Coordinator + Civil Rights Investigator
Oregon Health Authority
Equity and Inclusion Division
Mavel.Morales@state.or.us
971-673-2000 [desk]

---

**From:** Jerry Menchu <manger28@hotmail.com>
**Sent:** Friday, November 1, 2019 4:55 PM
**To:** Morales Mavel <MAVEL.MORALES@dhsoha.state.or.us>
**Subject:** Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for provider/clients,

> **Think twice** before clicking on links or opening attachments. This email came from outside our organization and might not be safe. If you are not expecting an attachment, contact the sender before opening it.

ATTN:
Civil Rights Investigator:
Mavel Morales
DHS, OHA
Civil Rights Division-Intake
Desk: 971-673-2000
mavel.morales@state.or.us

Dear Mavel I contacted you back in 2017 regarding Multnomah County health department using its workers to interpret for its English deficient patients citizens of Oregon without being certified as Oregon Administrative Rules demands it. I am now sending you direct evidence that Multnomah Co, through its OA's (Office Assistance and Medical Assistance workers) is using its workers as interpreters between patient/provider per OA's and Medical assistance job description.  Now that the State of Oregon knows about this negligence it could turn up In violation of Oregon's "Common Law Tort of Negligent infliction of Emotional Distress" for any of MCHD's client/patient who could in the future be caused distress, injury or any wrong doing by using non-qualified bilingual staff offering an inferior service when there exists a "less discriminatory alternative", by using whenever possible, MCHD's pool of qualified healthcare interpreters.

**(common law of tort of negligent infliction of emotional distress)**

MCHD owes its clients a duty to exercise reasonable care in there regulation and management including the duty to exercise reasonable care in hiring and/or supervising and/or contracting with those acting on there behalf and at

EX♭ #4 P.4

their direction and under their name in the treatment of their patients and cannot be reckless in breaching their duty of care to its patients so as to fail well below the applicable standard of care and directly , proximately, and legally cause harm to then specifically by failing to comply with the federal and state civil rights laws that mandate equal treatment and prohibit racial and national origin discrimination, and by failing to adequately hire and/or supervise and/or contract with those acting on their behalf and at their direction and under their name in serving their patients at any of their establishments. MCHD should know ahead of time their failure to exercise due care and their failure to train and supervise employees or agents, or their failure to conduct due diligence in the screening of their franchises or agents, could cause harm severe emotional distress to its clients.

Please note:

On the above a recipient of federal funding cannot be a shield from Section 1557 or Title VI by simply using untrained workers because both "recipient" and worker who help distribute the recipients programs or activities could end up liable under Section 1557 or Title VI, even if the third party is a worker.

Basically 45 CFR at 92.4 and 45 CFR at 92.201, automatically triggers OAR 333-002-0040." into action as a "State of Oregon Law"

In 2017 I contacted Jonathan Ostar, Multnomah County's Office of Diversity and Equity at: 503-988-4201 and also spoke to Mavel Morales OHA's civil rights investigator (I have emails to prove this) and submitted a HHS complaint and HHS send out a one and only technical support and warned that if this practice continued it could end up investigation the County and anyone else involved. Multnomah County has now in the eyes of this violation, added with defiance to the law to its workers job description in using its workers as non-qualified interpreters. This is not only negligence but also HHS sends grant money to Multnomah for the use of good quality interpreting services and in return, the County is using its untrained workers as interpreters, then the question should follow: What is Multnomah using its HHS grant money for? good quality interpreting services? the contrary is true, and so, what are they spending HHS money in?

OHA should send an immediate cease and desist letter in using its workers as non-qualified interpreters, if not, I will submit a complaint to HHS if needed in order to insure the safety of Oregon's English deficient citizens, patients of Multnomah County Health Dept.

thank you.

Jerry Alexander Menchu
complainant
1644 NW Bridgeway LN.
Beaverton, OR. 97006
503-442-2351
menchu36@gmail.com

Exb #4 p.5

---------- Forwarded message ----------
From: Jerry Menchu <manger28@hotmail.com>
To: Morales Mavel <MAVEL.MORALES@dhsoha.state.or.us>
Cc:
Bcc:
Date: Fri, 1 Nov 2019 23:55:18 +0000
Subject: Multnomah County is now using its workers OA 1 and 2 and Medical assistance to interpret for provider/clients,

> **Think twice** before clicking on links or opening attachments. This email came from outside our organization and might not be safe. If you are not expecting an attachment, contact the sender before opening it.

ATTN:
Civil Rights Investigator:
Mavel Morales
DHS, OHA
Civil Rights Division-Intake
Desk: 971-673-2000
mavel.morales@state.or.us

Dear Mavel I contacted you back in 2017 regarding Multnomah County health department using its workers to interpret for its English deficient patients citizens of Oregon without being certified as Oregon Administrative Rules demands it. I am now sending you direct evidence that Multnomah Co, through its OA's (Office Assistance and Medical Assistance workers) is using its workers as interpreters between patient/provider per OA's and Medical assistance job description.  Now that the State of Oregon knows about this negligence it could turn up In violation of Oregon's "Common Law Tort of Negligent infliction of Emotional Distress" for any of MCHD's client/patient who could in the future be caused distress, injury or any wrong doing by using non-qualified bilingual staff offering an inferior service when there exists a "less discriminatory alternative", by using whenever possible, MCHD's pool of qualified healthcare interpreters.

**(common law of tort of negligent infliction of emotional distress)**

MCHD owes its clients a duty to exercise reasonable care in there regulation and management including the duty to exercise reasonable care in hiring and/or supervising and/or contracting with those acting on there behalf and at their direction and under their name in the treatment of their patients and cannot be reckless in breaching their duty of care to its patients so as to fail well below the applicable standard of care and directly , proximately, and legally cause harm to then specifically by failing to comply with the federal and state civil rights laws that mandate equal treatment and prohibit racial and national origin discrimination, and by failing to adequately hire and/or supervise and/or contract with those acting on their behalf and at their direction and under their name in serving their patients at any of their establishments. MCHD should know ahead of time their failure to exercise due care and their failure to train and supervise employees or agents, or their failure to conduct due diligence in the screening of their franchises or agents, could cause harm severe emotional distress to its clients.

Please note:

On the above a recipient of federal funding cannot be a shield from Section 1557 or Title VI by simply using untrained workers because both "recipient" and worker who help distribute the recipients programs or activities could end up liable under Section 1557 or Title VI, even if the third party is a worker.

Exb #4 p.6

Basically 45 CFR at 92.4 and 45 CFR at 92.201, automatically triggers OAR 333-002-0040." into action as a "State of Oregon Law"

In 2017 I contacted Jonathan Ostar, Multnomah County's Office of Diversity and Equity at: 503-988-4201 and also spoke to Mavel Morales OHA's civil rights investigator (I have emails to prove this) and submitted a HHS complaint and HHS send out a one and only technical support and warned that if this practice continued it could end up investigation the County and anyone else involved. Multnomah County has now in the eyes of this violation, added with defiance to the law to its workers job description in using its workers as non-qualified interpreters. This is not only negligence but also HHS sends grant money to Multnomah for the use of good quality interpreting services and in return, the County is using its untrained workers as interpreters, then the question should follow: What is Multnomah using its HHS grant money for? good quality interpreting services? the contrary is true, and so, what are they spending HHS money in?

OHA should send an immediate cease and desist letter in using its workers as non-qualified interpreters, if not, I will submit a complaint to HHS if needed in order to insure the safety of Oregon's English deficient citizens, patients of Multnomah County Health Dept.

thank you.

Jerry Alexander Menchu
complainant
1644 NW Bridgeway LN.
Beaverton, OR. 97006
503-442-2351
menchu36@gmail.com

---------- Forwarded message ----------
From: Morales Mavel <MAVEL.MORALES@dhsoha.state.or.us>
To: Jerry Menchu <manger28@hotmail.com>
Cc:
Bcc:
Date: Tue, 19 Nov 2019 02:30:12 +0000
Subject: Multnomah County Health Department and HCI Concerns

Mr. Menchu:  Thank you for contacting the Office of Equity and Inclusion (OEI) at the Oregon Health Authority (OHA) regarding interpreter services at the Multnomah County Health Department.  After careful review we have determined that OEI does not have jurisdiction to investigate this matter.  I have sent your concerns to Neisha Saxena, Multnomah County Civil Rights Administrator.  It also appears that you are well aware of your right to contact U.S. Health and Human Services.  Thank you for reaching out to us.

Mavel *(Muh-Velle)* Morales

[She | Her | Hers]

OHA ADA Coordinator + Civil Rights Investigator

Exb #4 p.7

Oregon Health Authority

Equity and Inclusion Division

Mavel.Morales@state.or.us

971-673-2000 [desk]

Exb #4 p.8

**Fwd: Complaint' Multco is in violation of its Multnomah County Civil Rights Policy - Language Access**

jerry menchu <menchu36@gmail.com>

Fri 4/3/2020 5:06 PM

**To:** Ods00954Cpc <Ods00954Cpc@OfficeDepot.com>

---------- Forwarded message ---------

From: **Jerry Menchu** <jerry.menchu@multco.us>
Date: Mon, Dec 16, 2019, 11:43 AM
Subject: Fwd: Complaint' Multco is in violation of its Multnomah County Civil Rights Policy - Language Access
To: Menchu, Jerry <menchu36@gmail.com>

---------- Forwarded message ---------

From: **Diversity Equity** <diversity.equity@multco.us>
Date: Mon, Dec 16, 2019, 9:18 AM
Subject: Re: Complaint' Multco is in violation of its Multnomah County Civil Rights Policy - Language Access
To: Jerry Menchu <jerry.menchu@multco.us>
Cc: Robert Sinnott <robert.sinnott@multco.us>, Debi Smith <debi.smith@multco.us>, Adrienne DANIELS <adrienne.daniels@multco.us>, Neisha SAXENA <neisha.saxena@multco.us>, Benjamin DUNCAN <benjamin.e.duncan@multco.us>

Hello Mr. Menchu. We understand that you have filed a complaint with Oregon Health Authority making the same allegations relating to qualified interpreters in health clinics. The County Health Department is in the process of responding to that complaint which overlaps with this one. As a result, we await the outcome of that complaint, which will determine the outcome of this one.

Thank you,

Neisha Saxena
Civil Rights Administrator
Multnomah County Office of Diversity and Equity

On Thu, Dec 12, 2019 at 6:13 PM Jerry Menchu <jerry.menchu@multco.us> wrote:

> To: Civil Rights Administrator
> 501 SE Hawthorne Blvd. Portland, OR 97214
> Email: diversity.equity@multco.us
> Phone: 503-988-3399 TTY: dial 7-1-1

Exb #4 p.9

Dear Multnomah County Civil Rights Administrator, I am submitting a complaint regarding the Co. Language Access. when a person pulls up your website "Multnomah County Multco Global Language Access" (https://multco.us/global/language-access) one cant help but to look at its immediate right above where its says:

> "*Spoken Services:*
> *Interpretation*
> **you should always have access to a qualified**
> **and trained interpreters.**
> *We offer these services free upon request*"

And the above is in obvidiance to "Multco's Notice of Non-Discrimination" (please review attachment) and in obvidiance of "Multco's County Civil Rights Policy - Language Access. and in particularly where it says above: "*you should always have access to a qualified and trained interpreters.*" Multnomah County with the help of Civil Rights Director helped put this *notice of non-discrimination* troughout the County clinics where they still hang on the wall until this day. This had to do partly because of a complaint that was sent in 2017 to the United States Department of Health and Human Services "HHS" where HHS end up sending to Multnomah County some technical information regarding ACA 1557 and Language Access. HHS send technical information regarding the use of Qualified interpreters and through this information, explained what 1557 means regarding "*Qualified*" Also HHS through this information explained that the next time it receives another similar complaint "it could investigate the Co."

the Problem:

Multnomah County is in violation of ACA 1557 regarding Language Access, in violation of its own policy Multco's civil rights policy - Language Access and in violation of Oregon Health Authority "OHA" contract with Multnomah County at:   (please review attachment OHA contract with Multnomah Co.)

"*2. Member Rights under Medicaid*
"*e. Make Certified or Qualified Health Care Interpreter services available free of charge to each Potential Member and Member. This applies to all non-English languages, not just those that OHA identifies as prevalent. Contractor shall notify its Members and Potential Members that oral interpretation is available free of charge for any language and that written information is available in prevalent non-English languages in Service Area(s) as specified in 42 CFR 438.10(d)(4). Contractor shall notify its Members how to access oral interpretation and written translation service*"

in the above, "*Certified or Qualified Health Care Interpreter*" refers to interpreters who have training and been given a letter of approval from OHA through its branch Oregon Office of Equity and Inclusion "OEI" of either Qualified or Certified. It is required by OHA that all of its members in the CCO system use a "*Certified or Qualified Health Care Interpreter*" ( please review attachment "proof that Multnomah County is using its workers as interpreters)

The Reason:

Multnomah County just recently started to ad to its job description, the utilization of its OA 1 and 2 and medical assistance as Qualified trained interpreters, in contradiction to Multco' Civil Rights

Exb #4 p. 10

Policy - Language Access. and with this use of non-qualified interpreters, Multco is acting way below the regular standard of care with its patients. It also forces its workers to pass a very simple bilingual test, one no suitable to test ones interpreting skills. Multnomah County is perhaps confused, there exist a bilingual test, one that is used to evaluate a workers bilingual skills but these skills were to be used as for example: a OA using his/her bilingual skills to help book an appointment, where the patient speaks in the target language and the OA then translates the verbal messages in to English and writes down the information in English in her notes. Bilingual skills, vs Interpreting are both two different sciences. a person with limited bilingual skills should not be permitted to interpret for a Dr and patient setting, because this is dangerous and particularly when an interpreter has to explain diagnosis and give out medicine instructions. A qualified interpreter is one that dominates 100% both English and target languages and enjoys interpreting skills and has achieved certain education in medical terminology.

Multnomah County offers a bilingual test that is not suitable to test someone in interpreting skills, in fact anyone who perhaps learned from their humble parents and who perhaps are new comers in to the country and perhaps did not have the opportunity in obtaining any academia from their native country, are able to pass this bilingual test "Please review Attachment Multnomah County test Exhibit 13" and in comparison to all the requirements that a person who wants to become a Qualified/ Certified Health Care interpreter has to achieve to get a letter of approval from OHA . "Please review attachment OHA-OEI interpreting test" At the very least, one should obey the Federal ACA 1557 rule that makes it illegal to interpret without at least the minimal skills required by 1557.

A prayer for relief:

For Multco to please stop using its workers as Qualified Interpreters, this practice is dangerous and also welcomes workers who are in need of work and feel that if they don't demonstrate that they have some sort of interpreting skills, then they will not get a job. And this desperation could lead to being misleading. Also many workers around the Co. are angry because they say that they feel that if they don't want to interpret, then they could receive demotion, retaliation, etc.., and again putting the patient at risk.

please review attachment "MUTLNOMAH CTY 2017 HEALTH ASSISTANT 1 JOB DESCRIPTION" where it says:

> "As the Health Assistant 1 you will:
>  Serve as interpreter for non-English speaking patients throughout their visit, translate verbal communication between provider and patient."

please let me know if you need anything else

thank you,

Jerry Menchu
Multco Certified Health Care Interpreter.
Complainant
1644 NW Bridgeway Ln.
Beaverton OR. 97006
503-442-2351

Exb #4 p. 11

This email was encrypted for your privacy and security

--

Everyone deserves **DIGNITY and RESPECT.**
**I've taken the pledge ... have you?**
Learn more about the Dignity and Respect Campaign at:
www.dignityandrespect.org

ODE: Serving by holding Multnomah County accountable to ensure access, equity, and inclusion with its services, policies, practices, and procedures.

**Fan Us** on **Facebook**          **Follow us on Twitter**

This email was encrypted for your privacy and security

Exb # 4 P.12

# Exhibit 05

02 pages



# Oregon

**Bureau of Labor and Industries**
Val Hoyle
Commissioner

January 7, 2020

JERRY A MENCHU
1644 NW BRIDGEWAY LANE
BEAVERTON, OR 97006

RE:    Complainant:    Jerry A Menchu
       Respondent:    Multnomah County Health Department
       Case #:    AGEMAG190226-10283
       EEOC #:    38D-2019-00430C

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT

This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

Requests for copies or viewing this file will be processed as explained on the enclosed double-sided Request for Public Records form.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit
Carol Johnson, CRD Administrator

jl

**Date of Mailing**: January 7, 2020

Enclosure(s) Request for Public Records

**PORTLAND**
800 NE Oregon St. Suite 1045
Portland, OR 97232-2180
(971) 673-0761
Fax (971) 673-0762

**SALEM**
3865 Wolverine St. NE; E-1
Salem, OR 97305-1268
(503) 378-3292
FAX (503) 373-7636

**EUGENE** ✔
1400 Executive Parkway, Suite 200
Eugene, OR 97401-2158
(541) 686-7623
FAX (541) 686-7980

**BEND**
Apprenticeship and Training
Worksource Bend
1645 NE Forbes Rd, Ste 106
Bend, OR 97701-4990
(541) 322-2435
FAX (541) 389-8265

Oregon Relay TTY:711

www.oregon.gov/boli
AN EQUAL OPPORTUNITY EMPLOYER

**MEDFORD**
Apprenticeship and Training
119 N Oakdale Ave.
Medford, OR 97501-2629
(541) 776-6201
FAX (541) 776-6284

Exb 45
P.1

# Exhibit 06

02 pages

## DISMISSAL AND NOTICE OF RIGHTS

To: **Jerry Menchu**
**1644 NW Bridgeway Lane**
**Beaverton, OR 97006**

From: **Seattle Field Office**
**909 First Avenue**
**Suite 400**
**Seattle, WA 98104-1061**

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 38D-2019-00823 | **Kristine Jensen Nube,** **State & Local Program Manager** | **(510) 956-0011** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____  MK  1/30/2020
**Nancy A. Sienko,**
**Director**

Enclosures(s)

cc:

**MULTNOMAH COUNTY HEALTH DEPARTMENT**
**c/o Jenny Morf Madkour**
**Multnomah County Counsel**
**501 SE Hawthorne #500**
**Portland, OR 97214**

*(Date Mailed)*

Exb #6
P.1

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** --      **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** --      **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** --      **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** --      **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Exb 46 P.2

# Exhibit 07

04 pages



**DEPARTMENT OF HEALTH & HUMAN SERVICES**     **OFFICE OF THE SECRETARY**

Voice - (800) 368-1019
TDD  - (800) 537-7697
FAX  - (415) 437-8329
http://www.hhs.gov/ocr/

**Office for Civil Rights, Pacific Region**
**90 7ᵗʰ Street, Suite 4-100**
**San Francisco, CA 94103**

March 23, 2020

Mr. Jerry Menchu
1644 NW Bridgeway Lane
Beaverton, OR 97006

OCR Transaction Number: 20-361818

Dear Mr. Menchu:

On October 22, 2019, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), Pacific Region, received your complaint alleging that Multnomah County Health Department (MHD) is not compliant with Title VI of the Civil Rights Act of 1964 (Title VI) and Section 1557 of the Affordable Care Act (Section 1557). Specifically, you allege that that recipient uses non-qualified interpreters such as, Medical Assistants, Health Assistants I and II for Limited English Proficient (LEP) individuals. This allegation could reflect noncompliance with Title VI and/or Section 1557.

OCR has reviewed your allegations and determined that we have authority to investigate your complaint of discrimination on the basis of national origin. OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq), and Section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. § 18116).

We will attempt to complete the investigation of this complaint and advise you of our findings as soon as possible. If we determine that a violation of a regulation or statute has occurred, we will seek voluntary corrective action from the recipient. If we are unsuccessful in obtaining a voluntary resolution of this matter, we will refer this matter to our headquarters for appropriate action, which may include formal enforcement proceedings through an administrative hearing or referral to the U.S. Department of Justice.

A private right of action exists in some cases to remedy discrimination by a recipient of federal financial assistance. These private actions can be pursued independent of OCR's investigation. Complainants are not required to wait until OCR has completed an investigation before consulting with an attorney about legal rights in a case or about any applicable statute of limitation. Complainants may contact the local legal aid office or the bar association for lawyer referral services.

If you have any questions, please contact Laura Coronado, Equal Opportunity Specialist, the investigator assigned to this complaint at 415-437-8324.

Sincerely,

Michael Leoz
Regional Manager

Exb #7 P.1